ELLIS, Judge:
This case arises out of an automobile accident involving an automobile belonging to Dudley and Shirley Curry, an automobile belonging to the Iberville Parish Sheriff’s Office and an automobile operated by Edward G. Robinson. At about 1:30 a. m. on July 17, 1977, the Curry vehicle, operated by Mrs. Curry with Mr. Curry as a passenger, was heading south on La. Highway 1, a two-lane blacktop highway. The Currys intended to make a left turn off the highway into the parking lot of Dup’s, a nightclub. Their car was followed by a motor home and one or two other vehicles. As she approached Dup’s, Mrs. Curry slowed down and activated her left turn indicator. Mrs. Curry testified that she saw no one approaching from either direction and began her turn. Just when her front wheels were into Dup’s driveway, the Curry vehicle was struck in the left rear quarter panel by the Iberville Parish Sheriff’s Office vehicle, operated by Donald J. Daigle, an auxiliary deputy sheriff.
Mr. Daigle testified that he was driving south on Highway 1, going to White Castle to pick up someone. He came up behind a Winnebago motor home, turned on his blue lights and began to pass. When he was halfway around the Winnebago, going 55 or 60 miles per hour, he saw the Curry vehicle, making its turn. He applied his brakes and *1389 turned toward the shoulder, but was unable to avoid striking the Curry automobile.
No one was injured in this collision, and the record does not reveal the extent of damage to either vehicle. Mr. Curry got out of his vehicle and walked to the rear to survey the damage. While he was so engaged, a third vehicle, operated by Edward G. Robinson, approached from the' south and struck the Curry vehicle, propelling it into the sheriff’s car, and seriously injuring Mr. Curry, who was between the two vehicles.
Plaintiffs in this suit are Mr. and Mrs. Curry. The defendants as to whom the suit was tried were Mr. Daigle; National Fire and Marine Insurance Company, the sheriff’s automobile liability insurer; North River Insurance Company, the sheriff’s general liability insurer; Allstate Insurance Company, Mr. Daigle’s personal liability insurer; and the State of Louisiana, as Mr. Daigle’s employer. Mr. Daigle and National Fire third partied Mrs. Curry and Edward G. Robinson. The State third partied Mrs. Curry, Mr. Daigle, National Fire, Allstate, North River and Mr. Robinson. Issue was never joined as to Mr. Robinson.
After trial on the merits before a jury as to all defendants except the State, and before the judge as to the State, judgment was rendered in favor of Dudley Curry and against Mr. Daigle and North River for $520,000.00, and in favor of Mrs. Curry and against the same two parties for costs. The suit was dismissed as to Allstate, National Fire, and the State of Louisiana, and all incidental demands were dismissed.
On motion for new trial, the court found the State to be liable to plaintiffs as Dai-gle’s employer, and, apparently, granted it indemnity against Daigle and North River under its third party demand. From these judgments all parties have appealed, presenting to this court questions as to liability, contributory negligence, coverage, and quantum.
Donald J. Daigle was an auxiliary deputy sheriff. According to the record, he received no salary or compensation other than a small uniform allowance, but when on duty, had all the authority of a regular deputy sheriff, and performed the same duties as regular deputies. He received no training other than the experience of working with other deputies. On the night of the accident, he was on patrol in a sheriff’s car, which was equipped with blue lights and a siren. He had been directed by his dispatcher to go to a bar in White Castle and furnish transportation to a woman there. Apparently, this was a routine function performed by Iberville Parish deputies.
Mr. Daigle testified that after the first accident, which happened as set forth above, he immediately reported it to the dispatcher and was just hanging up his microphone when the second accident happened. He testified that he did not turn off his blue lights until after the State Police arrived on the scene some time later, and that he had taken no steps to protect the scene of the accident before the second accident occurred. There is other testimony in the record from a number of witnesses that the blue lights were off after the first accident, and that two or three minutes elapsed between the first and second accidents. The second accident happened when Mr. Robinson, in a highly intoxicated condition, failed to see the partial obstruction of the highway by the Curry vehicle, and struck it.
Mr. Daigle is said to be negligent in two respects: first, in executing his passing maneuver, and, second, in failing to perform his duty as a deputy sheriff by protecting the scene of the accident. We pre-termit discussion of the first accident, since it is clear from the record that Mr. Curry’s injuries were not caused thereby. As to the second point, the evidence is clear that a deputy is charged with the responsibility of protecting an accident scene. There is ample evidence that Mr. Daigle had two to three minutes in which to perform that duty, which was more than enough time. We agree with the jury that his failure to do so was a cause in fact of the second accident. Since his negligence was in connection with his official duties, the insurer of the sheriff’s office, and the State of *1390 Louisiana, as his employer, are also liable. Foster v. Hampton, 352 So.2d 197 (La.1977). We do not believe that Mr. Daigle’s status as an unsalaried auxiliary deputy can operate to relieve the State from its obligation. Mr. Daigle was acting as a deputy sheriff, with the full authority of that position bestowed on him by the Sheriff, which brings him squarely within the holding of Foster v. Hampton, supra.
National Fire, the Sheriff’s automobile insurer, and North River, his general liability insurer, each argues that coverage of this accident is excluded by their respective policies. North River argues that Mr. Daigle’s liability arises out of the use of an automobile and coverage is excluded by the terms of its policy. National Fire argues that Mr. Daigle’s liability arises from a failure to perform his official duties, and is therefore not covered by its automobile liability policy.
We agree with the holding of the trial judge that North River affords coverage to Mr. Daigle and that National Fire does not. Mr. Daigle’s negligence is based on his failure to secure and protect the scene of the accident. The fact that he might have utilized the blue lights on his vehicle as one means of carrying out his duty is not sufficient to make the second accident arise out of the use of the automobile. See LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978), for a case similar both in fact and result.
No error is assigned by any party to the finding of the court that no coverage of this accident was afforded to Mr. Daigle by Allstate, his personal automobile liability insurer.
After the first accident, Mr. Curry got out and walked around the back of his automobile to inspect the damage. Apparently, he was between his car and the sheriff’s car when the second accident occurred, and was struck and knocked into the ditch by his own vehicle. Since these two vehicles were partly on and partly off the highway, as was the point of impact between them, we do not know if Mr. Curry was on the paved surface of the road or the shoulder when the second accident happened. It is contended that Mr. Curry’s conduct in knowingly placing himself in a position of peril, on a public highway, constituted contributory negligence which precludes his recovery.
The jury, in answering the interrogatories propounded to it, found that Mr. Curry was negligent, but that his negligence was not a proximate cause of the accident. Clearly, the findings of the jury in the above respects are contradictory. Since we can place no greater weight on the one finding as opposed to the other, we will reach our own conclusion from the evidence as above detailed.
In Dupas v. City of New Orleans, 354 So.2d 1311, at 1313, (La.1978), the court said:
“As we summarized in Smolinski v. Taulli, 276 So.2d 286, 290 (La.1973) (citations omitted):
‘Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances. The party relying upon contributory negligence has the burden of proving it.
‘Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence.... [The victim] is required only to use reasonable precautions, and [his] conduct in this regard is not negligent if, by a commonsense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances.’ ”
Viewed in the light of the above principles, we do not find that Mr. Curry was unreasonable in his actions in going to inspect the damage to his vehicle. The road was only slightly obstructed by the two cars involved in the accident, and Mr. Curry may very well have been off the paved surface *1391 of the highway when the second accident occurred. His position proved to be perilous because of the failure of Mr. Daigle to protect the scene of the accident and the failure of Mr. Robinson to see what he should have seen. Mr. Curry is not barred by his conduct from recovery.
The jury awarded Mr. Curry a total of $520,000.00 in damages. Mr. Curry suffered a severely fractured right leg, a broken right arm, and abdominal and other internal injuries, accompanied by internal bleeding and a massive retroperitoneal he-matoma. An exploratory laparotomy was performed, his right leg injury was debrid-ed, and an open reduction of the leg fractures was done. Mr. Curry remained in the intensive care unit until July 29, when he was removed to the orthopedic floor. On August 2,1977, an open reduction and fixation of his broken right arm was performed. Physical therapy was commenced shortly thereafter and continued until his discharge from the hospital on September 2, 1977. Physical therapy continued for four months thereafter.
In April 1978, Mr. Curry was readmitted to the hospital for skin grafts over the wounds on his right leg. The grafts failed to take, and the graft sites became infected. On May 31,1978, his right leg was amputated just below the knee because of chronic osteomyelitis and gangrene. In November 1978, he was fitted with an artificial leg.
The expert testimony in the record makes it clear that Mr. Curry will have difficulty walking on grades and uneven surfaces; that his ability to climb stairs and ladders will be greatly impaired; and that his ability to function as a heavy equipment operator would be greatly impaired because of loss of dexterity and sensory perception in the right leg and foot. There was ample evidence in the record from which the jury might have concluded that Mr. Curry was not able to perform the duties of a heavy equipment operator with safety. Mr. Curry is not trained in any other occupation and has a fifth grade education.
The expert economist who testified found that Mr. Curry’s economic loss because of his injury totalled $483,679.46, including $68,058.46 in lost earnings up to the time of trial, $346,669.00 in future lost wages, allowing a deduction for minimum wage, and a net loss of fringe benefits of $68,852.00. This figure was based on the presumption that Mr. Curry would be employed at all times. The record reflects, however, that there are periods when no work is available, and this was not taken into account by the expert. When the figure is reduced by 25 per cent, and the past and future medical expenses are taken into account, about $120,000.00 remains as the award made by the jury for pain and suffering. We think this award is amply supported by the evidence, and that the total award of $520,-000.00 is well within the range of discretion accorded the trier of fact.
Finally, we agree with the finding of the trial judge that the State of Louisiana is entitled to full indemnification from Daigle and North River. The liability of the State arises from the provisions of Article 2320 of the Civil Code, and is purely secondary. Under this circumstance, the State is entitled to reimbursement from its negligent servant. Johnson v. Dabbs, 194 So.2d 816 (La.App. 1st Cir. 1967).
Since the judgment below is unclear as to the last point discussed, it will be amended so as to provide specifically for judgment in favor of the State of Louisiana on its third party demand against Donald J. Daigle and North River Insurance Company, in solido, for any amounts it may pay as a result of the judgment against it in favor of plaintiffs. As amended, the judgment is affirmed, at the cost of Donald J. Daigle and North River Insurance Company.
AMENDED AND AFFIRMED.