621 So.2d 591 (1993)
Scott BLAIR, et al.
v.
Michael L. TYNES, et al.
No. 92-C-3294.
Supreme Court of Louisiana.
July 2, 1993.
Rehearing Denied (1 pet.) and as Clarified on Rehearing September 17, 1993.
*593 Mack E. Barham, Robert E. Arceneaux, Kathy S. Austin, Barham & Arceneaux, Sam J. Collette, Jr., Dawn Amacker, Collette & Amacker, for applicant.
Steven M. Lozes, Lloyd F. Schroeder, II, Thomas Allen Usry, Maureen B. Jennings, Usry & Weeks, H.F. Foster III, Bienvenu, Foster, Ryan & O'Bannon, Daniel A. Rees, Donald M. Fendlason, Christovich & Kearney, for respondent.
ORTIQUE, Justice[1].
Plaintiffs appeal a Court of Appeal ruling affirming, in part, reversing, in part and amending a trial court judgment that found defendants Michael Tynes, the Washington Parish Sheriff's Office and, Magic City Post 24, American Legion liable for the wrongful death of Theresa Jones Blair and for the injuries sustained by Susan Jones Hillhouse, as a result of a traffic accident in which pedestrians who were attempting to cross a state highway were struck by a pick-up truck in Washington Parish, east of Bogalusa, Louisiana 610 So.2d 956. The trial court also found that plaintiffs were negligent and reduced their recovery in proportion to the fault attributable to them. We find that the court of appeal erred in reversing and amending the judgment of the trial court without applying the appropriate standard of appellate review. The ruling of the court of appeal is reversed and the judgment of the trial court is reinstated.

FACTS
On November 13, 1987, Scott Blair, his wife Theresa Jones Blair, and Susan Jones Hillhouse, Mrs. Blair's sister, were invited to a Mardi Gras function sponsored by the Krewe of MCAA, Inc., at Magic City Post No. 24, American Legion Home located on Highway 10, just east of Bogalusa, Louisiana. The Krewe of MCAA, Inc. entered into a lease agreement with the American Legion which provided for the use of Magic City Post No. 24 by the Krewe for the purpose of sponsoring a Las Vegas Night fundraiser.
The lease agreement provided that lessee (MCAA) was responsible for providing special security personnel at lessee's expense. In this case, the special personnel were Washington Parish Sheriff's Deputies. The lease also required the American Legion facilities manager to approve, hire and schedule special personnel for the purpose of directing traffic in connection with the Mardi Gras fundraiser. American Legion Facilities Manager, David Rester, contacted Deputy Luke Miley of the Washington Parish Sheriff's Office and requested five (5) deputies to direct traffic on the evening of November 13, 1987. The number of deputies hired by the American Legion was based upon the American Legion's previously *594 established policy of hiring one (1) deputy for each one hundred (100) persons expected to attend a function; it was estimated that five hundred (500) persons would attend the fundraiser on November 13, 1987. The Washington Parish Sheriff's Office sent Deputies Kenneth Stewart, Luke Miley and Percy Knight as well as Bobby Jordan and Walter Smith, who were auxiliary deputies, to the American Legion Post pursuant to Rester's request.
The American Legion Home has a parking lot adjacent to the building, known as the North Parking Lot. When that facility is filled to capacity, persons attending functions at the Home must park either on the shoulders of Highway 10 or in the South Parking Lot which is located across the highway from the American Legion. When the Blairs and Ms. Hillhouse arrived at the function around 7:30 p.m., they were directed to park in the South Parking Lot; when they were ready to cross the highway prior to entering the Home, a deputy standing in the middle of Highway 10, told Ms. Hillhouse to cross the highway.
The Blairs and Ms. Hillhouse left the function at the American Legion Home around 11:30 p.m. At that time, the sheriff's deputies were directing traffic along the highway. One deputy was on the north side shoulder of the highway directing cars exiting the North Parking Lot; another deputy was standing along the south side shoulder of the highway directing cars exiting the South Parking Lot. An official sheriff's vehicle was parked along the west end of the American Legion building on the north side shoulder with its emergency lights flashing. One deputy was just west of the Pearl River bridge directing traffic coming off the bridge, and another deputy was in front of the South Parking Lot, directing cars onto Highway 10; this deputy was located between the deputies to his east and to his west. The presence of the deputies created what plaintiffs perceived as a "protected neutral zone."
After looking both ways before crossing Highway 10, Scott Blair stepped into the roadway just in front of Theresa Blair and Susan Hillhouse; as they crossed the highway, Blair looked back toward Mississippi and then toward Bogalusa and saw no vehicles approaching. When Scott Blair was close to the center line, he first saw an approaching vehicle which was driven by Michael Tynes. Despite seeing the approaching vehicle, Blair and his companions continued to cross the highway; as Blair had observed the deputies flagging down the approaching vehicle and believed that the deputies would stop the Tynes vehicle or warn them as pedestrians that they were unable to stop the Tynes vehicle as is indicated previously. When plaintiffs arrived at the American Legion, one deputy did in fact advise plaintiffs when to cross the highway. However, the Tynes vehicle did not stop, and just as Scott Blair stepped from the roadway onto the shoulder, he heard a noise and looked back to see the Tynes vehicle strike and kill his wife and severely injure Susan Hillhouse. The only warning of the approaching vehicle given by the deputies to the Blairs and Ms. Hillhouse, according to uncontradicted testimony in the record, came almost simultaneously with the impact of the truck with the bodies of the two women.
Scott Blair filed the instant lawsuit individually and on behalf of his minor children, Jewell Scott Blair, Jr. and Michael Harrison Blair; Susan Jones Hillhouse, sister of the decedent, is also a plaintiff. Named as defendants were Michael L. Tynes[2], driver of the Ford Ranger pick-up truck that struck Mrs. Blair and Ms. Hillhouse; Norman Tynes[3], Michael Tynes' father; and the Tynes' insurers, Allstate Insurance Company and Atlanta Casualty Insurance Company.[4] The Washington Parish *595 Sheriff's Department through Sheriff Benny Rayburn, and its insurer were also made defendants. Plaintiffs' claims sounded in both negligence and strict liability. In Supplemental and Amending Petitions, plaintiffs added as defendants, Magic City Post No. 24 of the American Legion and its insurer, Scottsdale Insurance Company. The individual deputies were also named as defendants and a claim based upon the doctrine of respondeat superior was added against the Washington Parish Sheriff's Office. The Washington Parish Sheriff's Office filed a Third Party Demand, naming as defendants the Krewe of MCAA, Inc. and its insurer, Pelican State Insurance Company; Magic City Post No. 24 of the American Legion and its insurer, Scottsdale Insurance Company; and Michael Tynes and his insurers. Magic City Post No. 24 of the American Legion and its insurer, Scottsdale brought a Cross-Claim against the Washington Parish Sheriff's Office, the Krewe of MCAA, Inc. and its insurer, Pelican State Insurance Company[5], and Michael Tynes.
The trial court found for plaintiffs assessing fault as follows:

Plaintiff Blair 15% (as to his claims)
Plaintiff Hillhouse 15% (as to her claim)
Michael Tynes 50%
American Legion 10%
Washington Parish
 Sheriff's Office 25%

Both plaintiffs and defendants appealed the judgment of the trial court. The court of appeal reversed the trial court's judgment with respect to the liability of the American Legion and the Washington Parish Sheriff's Office. The court of appeal also reversed the trial court judgment with respect to the award of $100,000.00 to Scott Blair for mental anguish and emotional distress suffered as a result of seeing his wife run over by the Tynes vehicle. The court of appeal reapportioned fault as follows:

Plaintiff Blair 25% (as to his claims)
Plaintiff Hillhouse 25% (as to her claim)
Michael Tynes 75%

Plaintiffs sought writs in this court arguing that the court of appeal improperly exonerated the Washington Parish Sheriff's Office, erroneously granted the American Legion a "Pontius Pilate" defense in the face of a non-delegable duty which it voluntarily assumed, erroneously increased the degree of fault allocated to plaintiffs and erroneously reversed the award of damages to Scott Blair based upon the mental anguish and emotional distress suffered by him in witnessing his wife's death.
LIABILITY OF THE WASHINGTON PARISH SHERIFF'S OFFICE
The liability of the Washington Parish Sheriff's Office must be determined under a duty/risk analysis. Vicknair v. Hibernia Building Corporation, 479 So.2d 904 (La.1985); Harris v. Pizza Hut of Louisiana, 455 So.2d 1364 (La.1984); Smith v. Travelers Insurance Co., 430 So.2d 55 (La. 1983). These cases clearly set out the pertinent inquiries necessary to a determination of legal liability in tort cases. The pertinent inquiries include: 1) whether the conduct of which plaintiff complains was a cause-in-fact of the harm; 2) whether there was a duty on the part of the defendant which was imposed to protect against the risk involved; 3) whether there was a breach of that duty; and 4) damages. See Harris, supra, at 1370.
The Washington Parish Sheriff's Office contends that it had no duty to protect pedestrian invitees attending the fundraiser at Post No. 24 on the evening of November 13, 1987. La.R.S. 32:5[6] vests all *596 law enforcement officers of the state or its political subdivisions with authority to direct, control or regulate traffic and enforce the provisions of the Traffic Code and regulations of the Department of Public Safety. This statutorily imposed duty is of such great significance that under certain circumstances a motorist or pedestrian is relieved of liability for causing an accident if s/he acted in accordance with directions of a traffic control officer. Stakes v. Otterstater, 498 So.2d 1093 (La.Ct.App. 3rd Cir.1986). In Stakes, a motorist was directed by a traffic officer to enter an intersection. The defendant failed to stop at the intersection and broadsided the Stakes' vehicle. The court of appeal affirmed the trial court judgment dismissing defendant, finding that the accident was not due to any fault on the part of the defendant, but the result of the officer's improper control of the situation. The Court of Appeal also found that plaintiff was not negligent and that "[w]hile the directions of a traffic officer do not completely relieve a motorist of all obligations, where a motorist slowly and carefully moves forward in compliance with the directions of a traffic officer, he cannot be charged with negligence." 498 So.2d 1093, 1095. In Sutter v. Travelers Insurance Company 167 So.2d 517 (La.Ct.App. 4th Cir.1964), a wrongful death action, the defendant crossed in front of stopped traffic at the direction of a traffic officer and broadsided the vehicle driven by plaintiff's wife; the court of appeal affirmed the trial court judgment finding no negligence on the part of defendant. Likewise, in Goff v. Sarradet, 394 So.2d 655 (La.Ct.App. 1st Cir.1981), writ denied, 399 So.2d 600 (La. 1981), the defendant proceeded through a red light at the direction of a traffic officer causing a collision with the plaintiff's vehicle. The trial court judgment finding that the sole proximate cause of the accident was the breach of duty owed by the officer to safely direct traffic under the circumstances and dismissing plaintiff's action was affirmed. The duty imposed upon law enforcement officers is indeed a significant one.
The legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm. Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978); Prattini v. Whorton, 326 So.2d 576 (La.Ct. App. 4th Cir.1976). The Washington Parish Sheriff's Office contends that the statutorily imposed duty to safely direct traffic does not extend to pedestrians; however, our legislature has determined that "traffic" control encompasses not only the direction of vehicular traffic, but also the direction of pedestrian activity. La.R.S. 32:2 sets out the authority of the Department of Transportation and Development and states in pertinent part: ... "promulgate rules and regulations not inconsistent with this Chapter and the general laws relative to highways and their construction, maintenance, and use, and the operation of vehicles and pedestrians thereon ..." (emphasis added). La.R.S. 32:1(81) defines traffic to include pedestrians.[7]
This court has recognized that our law requires extra special protection for pedestrians. Baumgartner v. State Farm, 356 So.2d 400 (La.1978); Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985). Pedestrian protection is of such significance that we held in Baumgartner, that in pedestrian-motorist cases, pedestrian-plaintiff's contributory negligence would not bar his or her recovery[8]. Subsequent to the adoption of comparative fault, this Court revisited the issue of pedestrian negligence within the context of pedestrian-motorist accidents in Turner v. New Orleans Public Service, Inc., supra. In Turner, a pedestrian walked into *597 the path of an approaching bus and slipped and fell when attempting to save herself, resulting in the bus running over her foot. We found that plaintiff's negligence was slight, compared to that of the bus driver who failed to see plaintiff. There is absolutely no logical justification for imposing the duty of extra special protection of pedestrians upon motorists and not upon law enforcement officers. Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387 (La. Ct.App. 1st Cir.1981), writ denied, 410 So.2d 1130 (La.1982). In Curry, an auxiliary deputy was held liable for injury to a pedestrian based upon the deputy's failure to properly control an accident scene. The court of appeal committed manifest error in the case at bar in finding that the Washington Parish Sheriff's Deputies' duty to direct traffic in connection with the November 13, 1987 fundraiser did not encompass a duty to direct pedestrian activity.
Having determined that the deputies present at the American Legion Home on the night of November 13, 1987 had a statutorily and jurisprudentially imposed duty to assist pedestrians in crossing Highway 10, we must now determine whether the breach of that duty was a cause-in-fact of the death of Mrs. Blair and of the injuries suffered by Ms. Hillhouse. The deputies on duty that night had no training in traffic control other than the experience of functioning in traffic control capacities. The deputies testified that they had received no training in the area of traffic control, despite the educational and training requirements set out in La.R.S. 40:2401, which requires professional training in order to protect the health, safety and welfare of the public. The deputies testified that they did not understand that they had an obligation to be aware of pedestrian safety and to act accordingly. The deputies acknowledged that they had not formulated a traffic plan for that evening. It is undisputed that the deputies gave no warning to plaintiffs until it was too late to prevent the Tynes vehicle from striking Mrs. Blair and Ms. Hillhouse. The trial court found the failure to formulate a proper traffic control plan and the failure to assist pedestrians across the highway was a substantial factor in producing the situation, in light of fact that the presence of the deputies created what pedestrians believed was a "zone of safety." We find no manifest error in the trial court's finding regarding these facts. Therefore, we find that the court of appeal, having weighed the action by the trial court and having failed to find manifest error, erred in reversing the finding that the deputies had a duty to assist pedestrians in crossing the highway and that this duty was breached causing the harm to the pedestrians. We note particularly that "manifest error" is a term of art.
Not only did the deputies breach the duty to protect and assist these pedestrians by failing to formulate a traffic plan and by failing to warn them that the Tynes vehicle was approaching, they were negligent when they created what was described by Scott Blair as a "safety zone" which unfortunately proved to be a mere illusion. An irresponsibly created illusion: upon arriving at the American Legion facility, plaintiffs were directed to park in the South Parking Lot which was located across Highway 10 from the American Legion; when they crossed the Highway en route to the function, a deputy, who was standing in the middle of the highway, told them to cross the highway. Ms. Hillhouse testified that she thought the deputies were in control of the traffic and if the deputies were unable to stop the [vehicular] traffic, they would stop pedestrians from crossing the highway until it was safe to do so. While it may be true that the deputies were powerless to stop the Tynes vehicle, they could have prevented this tragedy by warning the pedestrians and/or telling them not to cross the highway. Warning pedestrians could have been accomplished despite the lack of training and the absence of a traffic control plan as the deputies were aware of the approaching vehicle long before it struck Mrs. Blair and Ms. Hillhouse. According to the testimony of Deputy Stewart, he saw the Tynes vehicle when it was approximately one (1) mile away from the American Legion post; deputies Knight and Smith saw the Tynes vehicle *598 when it was a quarter (¼) of a mile from the Post. Neither of the deputies sounded a warning until they were certain the Tynes vehicle would not stop, the only warning being given "almost simultaneously with impact." The court of appeal erroneously found that the deputies had no duty to avert disaster until disaster was certain to occur. This conclusion seems, under the circumstances, to set out a policy that is against the public good. Zeagler v. Town of Jena, 556 So.2d 978 (La.Ct.App. 3rd Cir.1990) (police officer's duty to maintain peace and order, prevent and detect crime and enforce law is one owed to public generally); Tompkins v. Kenner Police Department, 402 So.2d 276 (La.Ct.App. 4th Cir.1981) (officers act for public good, however as a result of closeness in proximity or time, relationship between officer and an injured party may become a one-to-one relationship).
Under a duty/risk analysis, the Washington Parish Sheriff's Office is clearly liable to plaintiffs, as there is a duty imposed upon employees of that office to protect the plaintiffs against the risk involved and the breach of this duty was a cause-in-fact of the harm suffered by plaintiffs. The trial court committed no manifest error in reaching the conclusion that the Washington Parish Sheriff's Office is liable to plaintiffs.
LIABILITY OF MAGIC CITY POST NO. 24, AMERICAN LEGION
The court of appeal erred in holding that the American Legion was not negligent and therefore not liable to plaintiffs for damages. American Legion facilities manager, David Rester requested five (5) deputies to work at the post on the night of November 13, 1987 pursuant to Paragraph 29 of the lease agreement between the American Legion and the Krewe of MCAA, Inc.[9] The trial court correctly found that the lease created an assumed duty to provide security including pedestrian protection in a non-negligent manner. Harris v. Pizza Hut, 455 So.2d 1364 (La.1984). We held in Harris, that businesses undertaking the hiring of security guards to protect themselves and their patrons are liable for physical harm that results from the negligence of security guards.
The actions found by the trial court to constitute negligence include the American Legion's hiring of too few deputies and deciding that the deputies were to be assigned to directing vehicular traffic with no deputies assigned to assist pedestrians. The record indicates that the policy of hiring one (1) deputy per one hundred (100) guests began when the Legion's only available parking facility was the North Lot adjacent to the Legion facility; there was no policy revision after the Legion obtained permission to use a vacant lot across Highway 10 as its South Lot. Facilities Manager, David Rester, testified that he was aware of the danger to guests posed by vehicular traffic travelling at high rates of speed on Highway 10 and that he knew that the South Lot would be used by guests of the Krewe of MCAA, Inc.
The trial court also correctly found that the Legion's failure to verify that the deputies had a traffic control plan which included assistance to pedestrians was a substantial factor in causing the accident which killed Mrs. Blair and injured Ms. Hillhouse. We find no manifest error on the part of the trial court in reaching this conclusion; consequently, the court of appeal erred in reversing the trial court judgment, finding that although the trial court's statement of the Legion's duty was correct, the law should not be applied. The court of appeal found that applying the law as to the Legion's duty would result in a requirement that untrained, unlicensed lay persons direct the performance of job functions of licensed professional law enforcement officials. However, all that the trial court would have required of the Legion was that it hire more deputies and advise *599 them that their responsibilities included pedestrian safety, actions not likely to lead to the extreme scenario depicted by the court of appeal.
Not only is the American Legion negligent in its own right, it is vicariously liable for the actions of the deputies who were special employees of the Legion. A determination as to whether a borrowed employee becomes the special employee of the borrower requires an assessment of inter alia, the level of supervision exercised by the borrower over the borrowed employees and whether the purported special employer has the authority to fire the person from the special employment position. Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979); Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978); State Farm Mutual Auto. Ins. Co. v. LeBlanc, 460 So.2d 673 (La.Ct.App. 1st Cir. 1984), writ denied, 462 So.2d 653 (La. 1985); McClain v. Holmes, 460 So.2d 681 (La.Ct. App. 1st Cir.1984); Faust v. Mendoza, 415 So.2d 371 (La.Ct.App. 1st Cir.1982); Cappo v. Vinson Guard Service, 400 So.2d 1148 (La.Ct.App. 1st Cir.1981); Benelli v. City of New Orleans, 478 So.2d 1370 (La.Ct. App. 4th Cir.1985); Thompson v. New Orleans Public Belt R.R., 373 So.2d 1312 (La.Ct.App. 4th Cir.1979).
Our jurisprudence has held that special and general employers may be solidarily liable in tort to third parties injured by the negligence of their employees. In Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La. 1978), we addressed the issue of whether the general employer of a negligent employee remained liable for its employee's tort despite the fact that the employee had been borrowed to perform services for a special employer at the time of an accident. We held that a general and special employer may be solidarily liable for injuries to a third party caused by an employee's negligence. The Legion argues that it was not the special employer of the deputies, suggesting that the deputies were independent contractors. This contention however overlooks David Rester's power to hire and schedule the deputies, his power to decide how many deputies should be hired as provided for in the lease agreement, as well as his power to assign the deputies to perform particular duties. Clearly, the court of appeal erred when it reversed the judgment of the trial court with respect to the liability of the American Legion as we find no manifest error on the part of the trial court in concluding that the American Legion was liable for the accident and injuries suffered by plaintiffs.
PLAINTIFFS' COMPARATIVE NEGLIGENCE
The trial court assessed plaintiffs' fault at 15% based upon their negligence in attempting to cross the highway when it was unsafe to do so. The court of appeal increased plaintiffs' fault assessment to 25%. We annunciated the criteria for fault assessment in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). Several factors may influence the degree of fault assigned, among which are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actor, whether superior or inferior, and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. "[T]he relationship between the fault/negligent conduct and the harm to plaintiff are considerations in determining the relative fault of the parties." 469 So.2d at 974.
The facts of this case lead us to the conclusion that plaintiffs were generally aware of the danger involved in crossing a highway, however, they relied upon the deputies to either control the traffic or advise them not to cross under unsafe circumstances. Therefore, we conclude that plaintiffs' conduct was more inadvertent than undertaken with a full awareness of the danger. Likewise, plaintiffs did not perceive that a great risk was created by their conduct because of their reliance upon the deputies to control traffic. Based upon the jurisprudence, as plaintiff-pedestrians, plaintiffs were of inferior capacity when compared with that of the driver of the pick-up truck and those of the deputies *600 some of whom had seen the Tynes truck approaching when it was at least a mile away.
In Turner v. NOPSI, 476 So.2d 800 (La. 1985), a pedestrian was injured when she was rushing to transfer from one bus to another and was run over by a third bus which struck her when she fell trying to avoid the approaching bus. Another pedestrian who brought an action arising out of an unrelated accident was knocked down by a truck travelling in reverse in a warehouse; plaintiff in that case was sent on a errand by his employer and did not see or hear the truck that hit him until it was too late to avoid the truck.[10] The truck had no lights or warning devices. We found that Ms. Turner's fault arose from having "walked almost into the path of a approaching bus. She put no one else in danger." 476 So.2d 800, 805. However, the negligence of the motorist who failed to see what he should have seen created a greater risk of harm to others. Ms. Turner's fault was assessed at 10%.
Based upon the Watson factors and the jurisprudence, we find that the court of appeal erred in increasing plaintiffs' fault and that the trial court committed no manifest error in assessing plaintiffs' fault at 15%.

DAMAGES FOR EMOTIONAL DISTRESS
The trial court awarded Scott Blair damages for emotional distress brought about by his witnessing the traumatic death of his wife, Theresa Jones Blair. The court of appeal reversed this portion of the trial court judgment, finding that Scott Blair did not meet the necessary burden of proof to support an award for emotional distress.
In Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990) we recognized a duty to protect against emotional distress that might be suffered by one witnessing negligent infliction of injury to another. We concluded in Lejeune, that mental pain and anguish claims resulting from injury to a third person are allowable when: 1) the claimant has viewed an accident or injury or arrived upon the scene soon thereafter before the victim's condition has substantially changed; 2) the victim must have suffered a traumatic injury of such severity that one in the claimant's position would be expected to suffer serious mental anguish; 3) the emotional distress is serious and reasonably foreseeable; and 4) there is a close relationship between the victim and the claimant. In Clomon v. Monroe City School Board, 572 So.2d 571 (La.1990), we denied recovery under the Bystander Recovery Rule because the plaintiff did not have a close relationship with the direct victim. Speaking for the court, Dennis, J., opined that in order to establish a methodology for "distinguishing fraudulent and idiosyncratic claims from meritorious ones, we deemed it necessary to impose [restrictions] on such claims ..." 572 So.2d at 574. The restrictions annunciated are those previously annunciated in Lejeune, which include no requirement that a clinical diagnosis of mental anguish be made. Clearly, damages are recoverable for mental pain and anguish based upon the application of the Lejeune factors to the facts of this case.
The question now before us is whether Scott Blair proved that he has suffered mental anguish sufficient to support recovery. Adopting a "reasonable person" test for determining whether emotional distress supports recovery, we found that "compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating." 556 So.2d 559, 570. The trial court found based upon testimony that prior to the accident in which his wife died, Scott Blair led an active life and had a good employment record; Blair had not worked in the three (3) years that had passed since the accident, and that he had become withdrawn and introverted. Although Scott Blair had not been diagnosed as schizophrenic or psychotic, the trial court found that he carried his burden sufficiently to support recovery of damages for mental anguish.
*601 This court has yet to address whether a diagnosis of a psychiatric disorder is required to meet the Lejeune burden of proof to recover damages for mental anguish. Our intermediate appellate courts have affirmed trial court judgments awarding Lejeune damages where there has been no medical diagnosis of a psychiatric disorder. In Matthews v. Turner, 566 So.2d 133 (La. Ct.App. 5th Cir.1990), writ denied, 571 So.2d 645 (La.1990), the court affirmed a trial court judgment awarding $50,000.00 to a mother who observed her daughter's pain and suffering for a 48 hour period immediately preceding her daughter's death from peritonitis secondary to a ruptured appendix. The ruptured appendix had been misdiagnosed as a urinary tract infection. The court of appeal acknowledged the uncertainty of the extent of an award under Lejeune, but noted that the mother's "despondent plight during her daughter's fatal illness is well documented in the record." 566 So.2d at 135.
Likewise, in Dixon v. Mid-South Rail Corporation, 580 So.2d 438 (La.Ct.App. 2nd Cir.1991), writ denied, 584 So.2d 1160 (La.1991), plaintiff was a passenger in a car driven by her son who was killed when the car collided with a train. The court of appeal upheld the award of Lejeune damages based upon the psychological and emotional distress suffered by plaintiff upon witnessing her son's demise; the court of appeal does not indicate that clinical proof of plaintiff's condition was offered. We hold that under the circumstances present in this case, plaintiff met his burden of proof to sustain recovery of damages under the Bystander Recovery Rule, without presenting proof of a clinical diagnosis. We find that the trial court was not clearly wrong in concluding that Scott Blair's claim was proved sufficiently to support an award under the Bystander Recovery Rule.
By reversing the trial court's award of Lejeune damages to Scott Blair, the court of appeal granted relief to a party that did not seek relief in the appellate court. When the court of appeal reversed the trial court's finding of liability against the Washington Parish Sheriff's Office, the only remaining party liable to plaintiff for damages was Michael Tynes. Tynes did not appeal the judgment of the trial court. The action of the court of appeal is clearly a departure from proper judicial proceedings. We held in Francois v. Ybarzabal, 483 So.2d 602 (La.1986), that a request for an increase in quantum of damages contained in one insurer's answer to another insurer's appeal of judgment against it, did not permit review of the final judgment against the excess insurer which did not appeal, construing La.Code Civ.Proc. art. 2133. It is improper to reduce a damage award in favor of a party who doesn't seek review. Cox v. Dept. of Highways, 252 La. 22, 209 So.2d 9 (1968); Blasingame v. Anderson, 236 La. 505, 108 So.2d 105 (La.1959). Consequently, we hold that the court of appeal erred in reversing the portion of the judgment awarding Scott Blair damages under the Bystander Recovery Rule.
This opinion is not intended to curtail or limit the authority of the courts of appeal with respect to the scope of review as set out in the Louisiana Constitution, yet we find it necessary to again point out that the appropriate standard of appellate review requires an appellate court to find that a lower court committed manifest error or was clearly wrong in its findings of fact. Rosell v. Esco, 549 So.2d 840 (La. 1989). In this case, the court of appeal correctly concluded that the law imposed a duty on the American Legion to hire the appropriate number of deputies, and to advise them of their duties as special personnel, but erred when it did not apply the law consistent with that conclusion. Blair v. Tynes, 610 So.2d 956, 960 (La.Ct.App. 1st Cir.1992).
Where the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous or *602 clearly wrong. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La. 1990). We find that the judgment of the trial court is not in any respect manifestly erroneous.

DECREE
For the reasons assigned, the ruling of the court of appeal is reversed and the judgment of the trial court is reinstated.
COURT OF APPEAL REVERSED; TRIAL COURT JUDGMENT REINSTATED

ACTION ON APPLICATIONS FOR REHEARING

Sept. 17, 1993
Rehearing granted for the sole purpose of clarifying our original judgment. The judgment of the trial court is amended to reflect the solidary liability of the American Legion with the Washington Parish Sheriff's Department for the 25% of fault assessed against the deputies of that department, as well as the independent liability of American Legion for the 10% of fault assessed against it as a joint tort-feasor for its own negligence. As amended, the trial court's judgment is otherwise reinstated in full.
CALOGERO, C.J.not on panel.
ORTIQUE, J.would deny the rehearing.
NOTES
[1] Pursuant to Rule IV, Part 2, Calogero, C.J., was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[2] Michael Tynes, driver of the vehicle that struck Mrs. Blair and Ms. Hillhouse, filed bankruptcy after the accident; plaintiffs sought relief in bankruptcy court and the court lifted the stay to allow the trial of this matter to proceed.
[3] Norman Tynes filed bankruptcy prior to trial, his debts were discharged and he was dismissed from this case.
[4] Allstate provided automobile insurance coverage and Atlanta Casualty provided homeowner's insurance to the Tynes.
[5] Pelican State brought a motion for summary judgment alleging that there was no coverage under the policy because of the "special event" exclusion. In order for a special event to be covered under Pelican's policy, the insured must notify Pelican of the event and Pelican must approve the event by specific endorsement. The insured must then pay a premium for the requested coverage. Pelican's Motion for Summary Judgment was granted and Pelican was dismissed as a party defendant by judgment dated May 21, 1990.
[6] La.R.S. 32:5 provides:

All law enforcement officers of this state or of any political subdivision thereof invested by law with authority to direct, control, or regulate traffic are authorized to enforce the provisions of this Chapter and regulations of the department and the commissioner adopted pursuant hereto, within their respective territorial jurisdictions, except as otherwise provided by law or this Chapter.
[7] La.R.S. 32:1(81) provides:

"Traffic means pedestrians, ridden or herded animals, vehicles, and other conveyances either singly or together while using any highway for purposes of travel."
[8] Baumgartner, supra, was decided prior to this state's adoption of a comparative negligence scheme.
[9] Paragraph 29 provides:

Cost of special personnel required for security, parking, etc., is additional cost and must be paid by the lessee. Special personnel required must be as approved by the Legion facilities manager who will hire and schedule these personnel, (emphasis added).
[10] The two cases were consolidated on appeal.