STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-900

ALAN BYARGEON

VERSUS

CONCORDIA CHAMBER OF COMMERCE, INC. ET AL.

**********
APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, DOCKET NO. 48353-A
HONORABLE KATHY JOHNSON, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

PETERS, J., concurs and assigns written reasons.

John C. Jacobs
John T. Joubert
Joubert Law Firm, A.P.L.C.
2171 Quail Run Drive, Suite B
Baton Rouge, LA 70808
(225) 761-3822
ATTORNEY FOR PLAINTIFF/APPELLANT:
    Alan Byargeon

Randall B. Keiser
Matthew L. Nowlin
Faircloth, Melton & Keiser, LLC
105 Yorktown Drive
Alexandria, LA 71303
(318) 619-7755
ATTORNEY FOR DEFENDANTS/APPELLEES:
    Eric Robinson, Kenneth "Benny" Costello, Jason Dauphin, Rusty Sammons, Sarah
    Smith, and State Farm Fire and Casualty Insurance Company

**David F. Butterfield**
**Mayer, Smith & Roberts, LLP**
**1550 Creswell Avenue**
**Shreveport, LA 71101-4722**
**(318) 222-2135**
**ATTORNEY FOR DEFENDANTS/APPELLEES:**
   **Kenneth "Benny" Costello**
   **Brandy Spears**

**Joshua K. Trahan**
**Juneau David**
**P.O. Drawer 51268**
**Lafayette, LA 70505-1268**
**(337) 269-0052**
**ATTORNEY FOR DEFENDANT/APPELLEE:**
   **William Heburn**

**John W. Perry, III**
**Perry, Atkinson, Balhoff, Mengis, Burns & Ellis, LLC**
**2141 Quail Run Drive**
**Baton Rouge, LA 70808**
**(225) 767-7730**
**ATTORNEY FOR DEFENDANT/APPELLEE:**
   **Jamie Wiley Burley**

**COOKS, Judge.**

On December 15, 2012, Kerry Byargeon was driving her vehicle eastbound on U.S. Highway 84 as she approached the new Mississippi River Bridge in the town of Vidalia, Louisiana, which is located in Concordia Parish. On this date, westbound traffic had been diverted from the old Mississippi River Bridge to allow runners participating in the Jingle All the Way 5K run (hereinafter 5K) to safely cross the river. That race began in Natchez, Mississippi and crossed the old bridge to Vidalia.

Normally, the new Mississippi River Bridge is solely used by eastbound traffic crossing from Vidalia to Natchez. It was alleged in the petition, that in her attempt to cross the bridge, Mrs. Byargeon was either unaware or not warned of any lane closure or redirection of traffic on the new bridge. It was further maintained there were no road closure signs, traffic control or diversion signs, barriers, cones, message boards, etc. to warn and inform the motoring public of the diversion of westbound traffic to the new bridge. Tragically, Mrs. Byargeon was involved in a head-on collision that took her life.

Alan Byargeon, the surviving spouse of the decedent, filed suit against several defendants, including the Concordia Parish Chamber of Commerce; the Natchez Chamber of Commerce; the Town of Vidalia, through the Vidalia Police Department; the City of Natchez, through the Natchez Police Department; the State of Louisiana, through the Department of Public Safety and Corrections, Division of the State Police; and the State of Mississippi, through the Department of Transportation and Development.

The petition alleged negligence on the parts of various defendants in the organization and management of the 5K (a cooperative effort between the Concordia Parish and Natchez Chambers of Commerce), in the placement of police

officers and in the lack of notification or warning to the motoring public (by the Louisiana State Police, Vidalia Police and Natchez Police).

Nearly one year after suit was filed, Plaintiff filed a Second Supplemental and Amending Petition. In that petition, numerous members of the MissLou Regional Healthcare Committee (hereafter the Miss Lou defendants) were named as defendants.[1] In his petition, Plaintiff alleged that the committee was "an unincorporated association formed as a subcommittee of the Regionalism efforts of the Natchez and Concordia Chambers." The allegations against the MissLou defendants focused on the alleged breach of duty to supervise law enforcement or to effectuate an adequate "traffic control" plan.

The MissLou defendants filed multiple exceptions, including insufficiency of citation of service of process, exceptions of no cause of action, and an exception of vagueness. As concerns the exception of no cause of action, the MissLou defendants alleged a limitation of liability applicable to members of an unincorporated association pursuant to La.R.S. 12:506. They also asserted an exception of no cause of action based on the belief that the MissLou defendants had no authority or duty to direct, control or regulate traffic during the 5K. A hearing was held on the various exceptions filed.

The trial court denied or pretermitted the majority of the exceptions made by the various MissLou defendants, but pertinent to this appeal, it sustained the exceptions of no cause of action asserting immunity as members of an unincorporated association pursuant to La.R.S. 12:506 and, alternatively on the grounds that the MissLou defendants had no duty or authority to direct, control or regulate traffic during the event. On July 6, 2015, the trial court signed a judgment

---

[1] Those individual members named in the Second Supplemental and Amending Petition were Sarah Smith, Jason Dauphin, Russell Sammons, Jamie Wiley Burley, Lesley Capdepon, Brandy Spears, Donny Rentfro, Benny Costello, Bill Heburn and Eric Robinson. State Farm Fire and Casualty Company, as the liability insurer of Sarah Smith, was also named a defendant.

2

sustaining those exceptions and dismissing the MissLou defendants with prejudice.[2] This appeal followed, wherein Plaintiff alleges the trial court committed clear legal error in finding he failed to state a tort cause of action.

## ANALYSIS

The standard of review for sustaining or denying a peremptory exception of no cause of action is de novo because it raises a question of law. *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346; *Hebert v. Shelton*, 08-1275 (La.App. 3 Cir. 6/3/09), 11 So.3d 1197. The Louisiana Supreme Court in *Fink*, 801 So.2d at 348-49 (citations omitted), discussed the function of an exception of no cause of action:

> The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. . . . [A] petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.

In one of its exceptions of no cause of action, Defendants relied on La.R.S. 12:506 as a shield to liability in this case. That statute discusses the liability in tort of members of an unincorporated association, and provides in pertinent part:

> A. An unincorporated association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties, and liabilities in contract and tort.
>
> . . . .
>
> C. A person is not liable for a tortious act or omission for which an unincorporated association is liable merely because the person is a member, is authorized to participate in the management of

---

[2] The judgment on the exceptions dismissed with prejudice the claims against "Eric Robinson , Kenneth "Benny" Costello, Russell Sammons, Jason Dauphin, Sarah Smith, State Farm Fire and Casualty Company (as homeowner's insurer of Sarah Smith), Brandy Spears, William "Bill" Heburn and Jamie Wiley Burley."

3

the affairs of the unincorporated association, or is a person considered to be a member by the unincorporated association.

> D. A tortious act or omission of a member or other person for which an unincorporated association is liable is not imputed to a person merely because the person is a member of the unincorporated association, is authorized to participate in the management of the affairs of the unincorporated association, or is a person considered to be a member by the unincorporated association.

The statute does not create an *unqualified* immunity against negligent acts perpetrated by any member of an unincorporated association. The specific language of the statute states that a member is not liable "**merely** because the person is a member." (Emphasis added.) Contrary to defendants' position, La.R.S. 12:506 does not provide that every member of an unincorporated association is immune from any potential liability simply by virtue of their membership in the association. It does provide that a member of an unincorporated association cannot be held liable for the acts of the association or another member simply based on his/her membership alone. Thus, La.R.S. 12:506 does not provide a shield from liability for individual members of the MissLou Regional Healthcare Committee who may have individually performed acts or omissions which caused the harm that befell Mrs. Byargeon.

The trial court also granted a second exception of no cause of action on the basis that the MissLou defendants did not have the authority, under state law, to direct, control and/or regulate traffic during the 5K. They argue that pursuant to La.R.S. 32:1, *et seq.*, only the police were responsible for the traffic control plan in place during the 5K.

This argument is not supported by the Louisiana Supreme Court's opinion in *Blair v. Tynes*, 621 So.2d 591 (La.1993). In *Blair*, deputies from the Washington Parish Sheriff's Office were hired by the American Legion to direct traffic in connection with a fundraising function held at the American Legion Home. One

person attending the event was killed and another injured due to the deputies' negligence in failing to protect them from oncoming cars as they walked across the highway to the parking lot. The deputies were clearly acting in a law-enforcement capacity in providing traffic control for the private event. Their general employer, the sheriff's office, trained the officers and dictated their methods of performing such a job. However, the special employer, the American Legion, determined how many deputies to hire for the job and directed the loaned deputies to perform particular duties throughout the evening. Among the named defendants were the Washington Parish Sheriff's Office, the five individual deputies, and the owner of the facility, the American Legion. The trial court found the Washington Parish Sheriff's Office 25% at fault and the American Legion 10% at fault.

On appeal, the first circuit reversed the trial court's judgment with respect to the liability of the Washington Parish Sheriff's Office, finding its duty to direct traffic in connection with the fundraiser did not encompass a duty to direct pedestrian activity. *Blair v. Tynes*, 610 So.2d 956 (La.App. 1 Cir. 1992). The appellate court also reversed the trial court's judgment as to the American Legion and found it was not negligent and, therefore, not liable for damages. *Id.*

The Louisiana Supreme Court granted writs and then reversed the judgment of the appellate court finding the Washington Parish Sheriff's Office and American Legion free from fault. The trial court's judgment was reinstated in full. *See Blair*, 621 So.2d 591. The supreme court noted that the "legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm." *Id.* at 596. Despite the paramount duty given to law enforcement to regulate traffic, the supreme court found the American

5

Legion comparatively at fault due to its assumption of a duty to provide security (including pedestrian protection) in a non-negligent manner. The supreme court gave the following reasons for finding the American Legion negligent:

> The actions found by the trial court to constitute negligence include the American Legion's hiring of too few deputies and deciding that the deputies were to be assigned to directing vehicular traffic with no deputies assigned to assist pedestrians. . . .
>
> The trial court also correctly found that the Legion's failure to verify that the deputies had a traffic control plan which included assistance to pedestrians was a substantial factor in causing the accident which killed Mrs. Blair and injured Ms. Hillhouse. We find no manifest error on the part of the trial court in reaching this conclusion; consequently, the court of appeal erred in reversing the trial court judgment, finding that although the trial court's statement of the Legion's duty was correct, the law should not be applied. The court of appeal found that applying the law as to the Legion's duty would result in a requirement that untrained, unlicensed lay persons direct the performance of job functions of licensed professional law enforcement officials. However, all that the trial court would have required of the Legion was that it hire more deputies and advise them that their responsibilities included pedestrian safety, actions not likely to lead to the extreme scenario depicted by the court of appeal.
>
> . . . .
>
> . . . Clearly, the court of appeal erred when it reversed the judgment of the trial court with respect to the liability of the American Legion as we find no manifest error on the part of the trial court in concluding that the American Legion was liable for the accident and injuries suffered by plaintiffs.

Plaintiff in this case has alleged, while the Defendants may not have initially had a duty to control traffic and erect proper signage, they assumed that duty when they chose to hold the race and to redirect the normal flow of traffic on race day. *Blair* supports the assertion that it is possible some act or omission committed by the MissLou defendants in the direction, control and/or regulation of traffic in connection with the race could have been a contributing factor in the harm that befell Mrs. Byargeon.

6

Defendants cite several cases which did not find liability on the part of private defendants in the direction, control and/or regulation of traffic.[3] We find the cases cited by the MissLou defendants were not decided on exceptions of no cause of action, but instead were dismissals on summary judgment and involved an evaluation of the evidence presented at that stage to determine those particular defendants were not negligent. Thus, those cases did not hold those defendants could not have been negligent, but held the evidence did not support the allegations that they were negligent.

Plaintiff maintains the amended petition contained more than sufficient factual allegations against the MissLou defendants to state a cause of action. A review of the record reveals Paragraph 4(B) of Plaintiff's amended petition asserted:

> The members, the Natchez Police and the Vidalia Police negligently failed to prepare and implement a reasonable and safe traffic plan that would adequately warn the motoring public, including Kerry Byargeon, that the old bridge was closed and its traffic was diverted onto the new bridge and converted to two-way traffic. This negligence failure included but was not limited to failing to install/erect road closure signage, traffic control signage, traffic diversion signs, message signs, barriers, barricades, lights and/or variable message boards, snapback delineators, cones, barrels, failing to prepare and implement a formal, written traffic control plan, failing to provide verbal notice to the motoring public, failing to stop and alert all vehicles on both sides of the bridge of the altered traffic pattern, failing to use handheld signs, failing to use traffic control hand gestures, failing to utilize escort vehicles, failing to conduct a pre-race sweep of the new bridge, and failing to follow the Manual of Uniform Traffic Control Devices (MUTCD).

In the instant case, we find the allegations in Plaintiff's petition are conclusory and fail to state with specificity the specific individual acts of

---

[3]    The cases cited by Defendants are *Arthur v. City of DeRidder*, 01-305 (La.App. 3 Cir. 10/3/01), 799 So.2d 589; *Johnson v. Gilmore*, 99-1300 (La.App. 3 Cir. 4/5/00), 771 So.2d 662, *writ denied*, 00-1300 (La. 6/16/00), 765 So.2d 341; and *Oakley v. Thebault*, 96-937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488.

negligence committed by the named MissLou defendants.[4] For this reason, and not simply because the MissLou defendants were members of an unincorporated association or that they could not be liable because they did not have the authority, under state law, to direct, control and/or regulate traffic, we find Plaintiff's petition fails to state a cause of action against the individual MissLou defendants.

Nevertheless, La.Code Civ.P. art. 934 provides that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court." The article further provides that if the grounds of the objection cannot be removed by amendment, the action shall be dismissed. If the allegations of the petition are merely conclusory and fail to specify the acts or circumstances that establish a cause of action, then the trial court **shall** permit the plaintiff the opportunity to amend. *Badeaux v. Sw. Computer Bureau, Inc.*, 05-612 (La. 3/17/06), 929 So.2d 1211. We also note that the language of La.Code Civ.P. art. 934 does not limit a plaintiff to a single amendment of her petition; rather, additional opportunities for amendment of a petition may be allowed in the discretion of the court. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So.2d 114.

In the instant case, we are not prepared to find as a matter of law that the basis for the MissLou defendants' objections to Plaintiff's amended petition regarding the negligence claims against them cannot be removed by further amendment to the petition. Therefore, while we agree that the factual allegations are presently insufficient to state a cause of action against the MissLou defendants, we find it would be in violation of La.Code Civ.P. art. 934 not to allow Plaintiff an

---

[4] We note this problem likely would have been addressed by the dilatory exception of vagueness filed by the Defendants. However, the trial court pretermitted that exception when it granted the exceptions of no cause of action.

opportunity to amend his petition. Accordingly, the order of the trial court dismissing the MissLou defendants with prejudice is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Defendants have argued Plaintiff has not alleged any specific affirmative acts of negligence by the individual MissLou defendants because he simply cannot. While this may ultimately prove true, such a conclusion at this time would be premature and in violation of La.Code Civ.P. art. 934. If Defendants were under the belief Plaintiff was unable to allege any specific affirmative acts of negligence on their part, a motion for summary judgment could have been filed. Defendants could have pointed out the absence of factual support for one or more elements essential to Plaintiff's claims and the burden of proof would have shifted to Plaintiff to present evidence to the court demonstrating that there remains a genuine issue of material fact. However, that was not done here; thus, Defendants' contention that Plaintiff did not allege any specific affirmative acts because he cannot is only speculation and irrelevant to the exceptions of no cause of action filed herein.

### DECREE

For the above reasons, the trial court's judgment granting Defendants' exceptions of no cause of action is affirmed. However, we reverse the trial court's dismissal with prejudice of the MissLou defendants without first ordering an amendment of the petition. Therefore, the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed seventy-five percent (75%) to Plaintiff and twenty-five percent (25%) to the MissLou defendants.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

9

ALAN BYARGEON

VERSUS

CONCORDIA CHAMBER OF COMMERCE, INC., ET AL.


PETERS, J., concurring.

I agree with the result reached in this matter, but disagree with some aspects of the majority opinion. The majority finds error in the trial court's determination that only law enforcement officers have the authority under state law to direct, control, and/or regulate traffic during the event at issue in this litigation. In reaching that conclusion, the majority relies on the supreme court's decision in *Blair v. Tynes*, 621 So.2d 591 (La.1993), wherein an American Legion chapter was held partially at fault for the negligent actions of off-duty law enforcement personnel hired by the chapter to work traffic at a function. The supreme court did so based on its conclusion that the chapter assumed a duty to provide security in a non-negligent manner when it hired the officers *and* directed their duties.

In the matter before us, the plaintiff's pleadings do not come close to asserting any degree of control or direction by the MissLou defendants. Without such control or direction, the absolute authority to "supervise and regulate all traffic on all highways within the state highway system" is vested in the Louisiana Department of Transportation and Development pursuant to La.R.S. 31:2, and the enforcement of those regulations is vested in the Louisiana Department of Public

Safety and Corrections pursuant to La.R.S. 31:3. Therefore, the trial court correctly granted the exception of no cause of action without having to distinguish this matter from the fact situation in *Blair*, 621 So.2d 591.

While nothing in the record suggests that the plaintiff sought authority from the trial court to attempt to amend his petition to state individual causes of action against the MissLou defendants, I agree with the majority that La.Code Civ.P. art. 934 requires the trial court to "order such amendment within the delay allowed by the court[,]" if "the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition[.]" I have serious doubts concerning whether any amendment can successfully remove the grounds for the exception.

Despite the fact that the plaintiff is receiving relief on appeal, I agree that he should pay the bulk of the cost of appeal. He did note even raise the amendment issue in argument to this court, and a request to the trial court that he be given the opportunity to amend his pleadings could very well have precluded the necessity of this appeal.