577 So.2d 203 (1991)
John M. MANUEL and Patricia A. Manuel
v.
Daniel D. LUCKETT, et al.
No. CW/90/0472.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
Writ Denied May 17, 1991.
*204 Victor L. Marcello, Donaldsonville, for John Manuel.
Dana K. Larpenteur, Plaquemine, for Freddie Pitre and Daniel D. Luckett.
Kenneth L. Riley, Metairie, for Iberville Parish Police Jury.
Richard S. Thomas, Baton Rouge, for State Farm.
Gerald Jeffers, Baton Rouge, for the State.
Walter Thompson, Jr., New Orleans, for Walbrook Ins. Co.
Before COVINGTON, C.J., and SAVOIE and CRAIN, JJ.
*205 SAVOIE, Judge.
This is a tort suit brought by plaintiff, John Manuel,[1] to recover personal injury and property damages allegedly sustained due to an accident on March 11, 1988. The vehicle plaintiff was driving was struck by a vehicle driven by Iberville Parish Deputy Sheriff Daniel D. Luckett. Deputy Luckett was responding to a radio call he had received from Deputy Essie Stevens. Plaintiff filed suit against Deputy Luckett, Deputy Stevens, Iberville Parish Sheriff Freddie H. Pitre, Sr., Liberty Mutual Insurance Company (the Sheriff's automobile liability insurer), and Walbrook Insurance Company, Ltd. (the excess insurer for Sheriff Pitre), among others.[2] Plaintiff thereafter settled with the Sheriff's automobile liability insurer.
Walbrook filed a motion for summary judgment, contending that the language of its excess policy incorporated language from the primary/underlying policy and that this language excluded coverage for claims arising out of the use of an automobile, therefore barring the plaintiff's claim against Walbrook.[3] In his petitions, plaintiff alleged that Sheriff Pitre's negligent training of Deputy Luckett, and Deputy Stevens' negligent handling of the radio call to Deputy Luckett, caused or contributed to the automobile accident in which plaintiff was injured. The trial judge denied the motion for summary judgment without assigning written or oral reasons for judgment. Walbrook applied for a supervisory writ of certiorari, which this court denied. Walbrook then filed a writ application with the supreme court, which granted the writ and ordered the matter remanded to this court for briefing and an opinion. 566 So.2d 967.
The issue before this court is whether the trial court erred in denying Walbrook's motion for summary judgment and in failing to find that the automobile use exclusion applied.
Walbrook initially moved for a summary judgment with a Joint Stipulation, wherein Walbrook stated that it had issued to participants of the Louisiana Sheriff's Risk Management Program an Excess Law Enforcement Liability Insurance Policy; that the Sheriff's Risk Management Program provided primary coverage and that Walbrook provided excess coverage; that the excess policy incorporated the exclusions of coverage of the primary policy;[4] and that the underlying policy excluded coverage as follows:
4. Exclusions.
(A) The Agreement, and the assets of the Fund, shall not be used and shall not apply to the following:
* * * * * *
(ii) To any bodily injury, personal injury, and property damage arising out of *206 the ownership, maintenance, operation, use, loading or unloading of (a) any automobile, water craft over 35 feet in length, or aircraft owned or operated by or rented or loaned to any Insured or (b) any other automobile, water craft over 35 feet in length, or aircraft operated by any person in the course of his employment by any insured; ...
Because Walbrook accepted the allegations of the plaintiff's petition as true, we will now review those allegations. According to the plaintiff's petition, Manuel was driving on Louisiana Highway 74 in an easterly direction when he was struck broadside by a car driven by Deputy Luckett and owned by Sheriff Pitre. Plaintiff alleged that Deputy Luckett went through a red traffic control light. Plaintiff alleged that Deputy Luckett, who was acting within the course and scope of his employment, was negligent in failing to see what he should have seen, in failing to exercise reasonable and proper care in warning other motorists, in failing to yield the right of way, in improperly passing at an intersection, in illegally proceeding through a red traffic control signal, and in speeding.
Furthermore, according to plaintiff's petition, Sheriff Pitre failed to properly train Deputy Luckett as to proper police emergency procedures. At the time of the accident, Deputy Luckett was responding to a Code 3 call, but he failed to use his siren and barlight as required, allegedly due to his improper training. Plaintiff alleged that "Deputy Luckett's approach to the subject intersection at an unreasonable rate of speed, and his failure to reduce his speed ... and proceed across the intersection with caution" were due to negligent training. Plaintiff also alleged that the sheriff was negligent in failing to have an experienced deputy ride with Deputy Luckett to instruct and supervise Deputy Luckett's work.
As to Deputy Stevens, the dispatcher, plaintiff alleged that she was negligent in failing to properly code the call. Plaintiff alleged that the call was really a code 1 call, rather than a code 3 call, which did not require "the high speed and dangerous driving engaged in by" Deputy Luckett. According to plaintiff's petition, the sheriff was negligent in his failure to properly train Deputy Stevens and his failure to set up procedures for the reception of incoming calls and the transfer of the information to deputies on the road.
The plaintiff filed a memorandum in opposition to the motion for summary judgment wherein he stated that Walbrook's motion only presented legal issues since Walbrook was accepting all the allegations in the plaintiff's petition as true for purposes of the motion. He then stated that out of an abundance of caution, in opposition to the motion, he filed all depositions which had been taken which were not already of record. The plaintiff stated that he also relied on depositions already in the record. Attached to the plaintiff's memorandum was the affidavit of Larry Gould, wherein he stated that the coding system had a use beyond conveying information on how to use an automobile, such as information as to the call's seriousness, its priority, the assistance or equipment necessary to respond to the call, as well as whether the call is an emergency and whether the deputy must proceed with caution. Gould further stated that deputies "frequently receive coded calls and respond to them without the use of an automobile."
After Walbrook filed its writ application, the plaintiff and defendants Luckett, Pitre, and State Farm filed a "Joint Concurrence in Request for Issuance of Writs" wherein they urged this court to rule on the merits of the writ application while opposing it on the merits. The plaintiff also filed a request for admissions. In the request, the plaintiff wanted the defendants to admit that the managers of the Louisiana Sheriff's Risk Management Program determined that the automobile exclusion was not applicable to this case, that the attached policies were true copies of the Sheriff's Association Plan Document and of the Walbrook policy, and that the managers of the Louisiana Sheriff's Risk Management Program had the right to determine if the automobile exclusion was applicable. Sheriff Pitre answered the request for admissions, admitting that certain allegations *207 in the amending petitions "implicate coverage under the Louisiana Sheriff's Risk Management Program, if proven to be the proximate cause" of the plaintiff's injuries. He also admitted that the copies of the insurance policies were true copies and that the managers had the right to determine if the automobile use exclusion was applicable. The plaintiff then by ex parte motion withdrew his previous joint stipulation and filed into the records complete copies of Walbrook's insurance policy and the Fund portion of the Louisiana Sheriff's Risk Management Program. Walbrook then filed a motion to rescind the trial judge's ex parte order and/or for a new trial, which the trial judge ultimately denied. Meanwhile, in this court, the plaintiff withdrew his concurrence in the request of Walbrook for issuance of writs because he had been informed that this court could not consider the entire insurance policy. Walbrook opposed the plaintiff's withdrawal of his concurrence.
As provided in LSA-C.C.P. article 966, the motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Because Walbrook accepts the allegations of plaintiff's petition as true for purposes of the motion for summary judgment and because there is no dispute as to the contents of the insurance policies, there is no genuine issue of material fact. We must determine whether as a matter of law, based on plaintiff's petition, coverage is excluded by the automobile use exclusion in Walbrook's policy.
To determine whether the automobile use exclusion applies, we must answer both of these questions affirmatively: (1) whether the conduct of the insured of which the plaintiff complains was a legal cause of injury? (2) whether it was a use of the automobile? Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); Jones v. Louisiana Timber Co., Inc., 519 So.2d 333 (La.App. 2d Cir.1988). To decide whether the insured's conduct was a legal cause of the accident, we must use duty-risk analysis. Carter, 423 So.2d at 1087. In deciding the issue of whether the risk resulting in a person's harm was within the duty imposed on an alleged tortfeasor, we answer two principal questions: (1) was the conduct complained of a cause in fact of the harm? (2) was the alleged tortfeasor under a duty to protect against the particular risk involved? Carter, 423 So.2d at 1084. As to the second requirement, in order for the harm to arise out of use, the automobile must be essential to the theory of liability. Picou v. Ferrara, 412 So.2d 1297 (La.1982). The specific duty breached by the insured must flow from the use of the automobile. Jones, 519 So.2d at 336. If the specific duty breached by the insured existed independently of the automobile, then liability does not arise out of use even though the duty could have been performed by use of an automobile. Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App. 2d Cir. 1989), writ denied, 556 So.2d 41 (La.1990); Jones, 519 So.2d at 336.
Plaintiff put forth two theories of liability: (1) that Deputy Luckett was not properly trained to respond to an emergency call and was not accompanied in his vehicle by an experienced deputy and (2) that Deputy Stevens was negligent in failing to properly code the call due to poor training and inadequate procedures. We will analyze each theory of liability separately.
As to Deputy Luckett's negligent response to the emergency dispatch, we find that (accepting the allegations of plaintiff's petition as true) but for the poor training and lack of supervision by an experienced deputy, the accident would not have occurred. Had Deputy Luckett been trained in how to safely respond to an emergency, where he might be required to exceed the speed limit with his police vehicle and where he would probably need to use his siren and barlight, the accident would not have happened. The duty to properly train and supervise a deputy for response to emergencies while in a police vehicle would encompass the risk that a driver in another *208 vehicle would be hit by the police vehicle responding to an emergency. Therefore, the failure to properly train and supervise Deputy Luckett was a legal cause of plaintiff's injury.
We must now determine whether the automobile is essential to this theory of liability. We find that the automobile is essential to this theory of liability because the Sheriff's duty is to train deputies to properly respond to emergencies while in and with police vehicles. Therefore, as to the first theory of liability, we find that the automobile exclusion applies.
As to this first theory of liability, we find it similar to the negligent entrustment theory of liability alleged in Picou, 412 So.2d at 1298. In Picou, the supreme court found that, on a motion for summary judgment, the automobile use exclusion of defendant's general liability insurance applied where the plaintiff's motorcycle was struck by an automobile owned and operated by an employee who was on an errand for his employer. The supreme court found that use of the automobile was an essential element in the negligent entrustment theory of liability. Plaintiff's first theory of liability is unlike that in the case of LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978) and Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387 (La. App. 1st Cir.1981), writs denied, 410 So.2d 1130, 1135 (La.1982). In LeJeune, the supreme court held that the automobile use exclusion did not apply where a sheriff's deputy leading a funeral procession did not secure an intersection through which the procession passed, whereupon the hearse was struck by a car proceeding through the intersection. The court found that the deputy's failure to guard the intersection was a breach of his law enforcement duties independent of the use of an automobile. In Curry, this court held that the automobile use exclusion of the general liability insurer did not apply. In Curry, the plaintiff was injured when a car struck him while he was surveying the damage done to his car, which had been hit by a vehicle driven by a deputy. The court found that the deputy's failure to secure and protect the scene of the accident did not arise out of the use of his automobile.
As to Deputy Stevens' error in coding the call, we need not determine whether the negligent dispatch was a legal cause of the injury because we find, for purposes of the motion for summary judgment, that this did not constitute a use of the automobile. The duty to properly code a call exists independently of the automobile.
Because we have determined that the improper dispatch was not a use of the automobile, the automobile exclusion of Walbrook's policy is not applicable. We find that this theory of liability is analogous to those of the LeJeune and Curry cases, and distinguishable from that of the Picou case.
Thus, for the purposes of the motion for summary judgment, we find that the first theory of liability falls under the automobile use exclusion in the policy and the second theory does not fall under the automobile use exclusion.
Walbrook contends that a claim is either totally covered by an automobile policy or totally covered by a professional liability policy. While this was the case in Picou, Curry, LeJeune, and Carter, in those cases, the plaintiffs sought recovery under one theory of liability. In the case at bar, as in the case of Frazier v. State Farm Mutual Automobile Insurance Co., 347 So.2d 1275 (La.App. 1st Cir.), writ denied, 351 So.2d 165 (La.1977), the plaintiff has set forth two theories of liability, one of which is encompassed by the automobile use exclusion and one which is not.
In Frazier, a child that the defendants were babysitting was injured when the defendants' minor daughter ran over the child with her car. The defendants' homeowner's insurer, which was also a defendant, filed an exception of no cause of action on the basis that the automobile use exclusion would apply. The court found that the plaintiff's petition alleged two causes of action, one against the automobile insurer for the driver's negligent operation of the vehicle and one against the defendants for failure to properly care for the child. As to this second cause of action, *209 use of the automobile was not essential to the theory of liability and therefore, the exclusion did not apply.
On the bases of the record before us, we find that plaintiff's argument that Walbrook is bound by the primary's insurer's decision that this claim would be covered has no merit. We have reviewed the two insurance policies thoroughly and there is no indication that Walbrook gave up its right to determine the scope of its coverage based on the policy language. Additionally, Walbrook has a contractual relationship with its insured, the sheriff, which is separate from that of the primary insurer. See Great Southwest Fire Insurance Co. v. CNA Insurance Companies, 557 So.2d 966 (La.1990).
For these reasons, the judgment of the trial court denying Walbrook's motion for summary judgment is affirmed. Walbrook is to pay all costs of the appeal.
AFFIRMED.
NOTES
[1] Also named as plaintiffs were Patricia Manuel, the wife of John Manuel, and Jason and Lindsey Manuel, the Manuels' children, appearing through their tutor and tutrix, John and Patricia Manuel.
[2] Other named defendants were the Office of Sheriff, Iberville Parish; the State of Louisiana; the Police Jury of the Parish of Iberville; and State Farm Mutual Automobile Insurance Company (plaintiff's uninsured motorist carrier). Suit was dismissed as to the State and the Police Jury after motions for summary judgment they filed were granted. Suit was dismissed as to State Farm after the plaintiff settled with it.
[3] Plaintiff's fifth amending petition actually named as defendants Walbrook Insurance Company, Ltd.; Anglo American Insurance Company, Ltd.; LUI Syndicate, Inc.; Calfed Syndicate, Inc.; and Capital Insurance Company, Ltd. Plaintiff voluntarily dismissed without prejudice his claims against LUI Syndicate, Inc. and Calfed Syndicate, Inc. The remaining members of the Walbrook group answered and admitted to having issued the insurance policy involved herein. The remaining members of the Walbrook group are: Kraft Insurance Company, Ltd.; El Paso Insurance Company, Ltd.; Louisville Insurance Company, Ltd.; Ludgate Insurance Company, Ltd.; Mutual Reinsurance Company, Ltd.; Compagnie Europeenne D'Assurances Industrielles, S.A.; C.E. Heath Underwriting and Insurance (Australia) PTY, Ltd.; and General American Fidelity & Guaranty Corporation.
[4] The provision of Walbrook's policy incorporating the provisions of the primary policy reads as follows "Notwithstanding anything contained herein to the contrary this Policy ... shall otherwise be subject to the same terms, conditions, exclusions and other provisions as the Underlying Insurance as set forth in the Schedule of Underlying Insurance ..."