670 So.2d 220 (1996)
Virginia Gail EDWARDS, et al., Plaintiffs-Appellees,
v.
Edward M. DAUGHERTY, Jr., et al., Defendants-Appellants.
No. 95-702.
Court of Appeal of Louisiana, Third Circuit.
January 10, 1996.
Writ Denied March 22, 1996.
*221 Clayton Arthur Larsh Davis, Winfield Earl Little Jr., Reuvan Nathan Rougeau, Samuel B. Gabb, for Virginia Gail Edwards et al.
Michael H. Schwartzberg, for Edward M. Daugherty Jr. et al.
John Lee Van Norman, III, Bryan Forrest Gill, Jr., for City of Westlake.
Thomas Joseph Solari, John Freeman, George Manos, Jeffrey Goldwater, for International Surplus Lines Ins. Co.
Clint D. Bischoff, for United Community Insurance Company.
Michael Steven Beverung, for Wayne McElveen, Sheriff of Calcasieu Parish.
Alfred V. Pavy Boudreaux, for David Blanchard and Interstate Guaranty.
John Stanton Bradford, for Gary B. Bailey and State Farm Mutual Auto.
Jeffrey Martin Cole, for West Calcasieu Cameron Hospital, et al.
Leon Joseph Minvielle, III, for Florence Miller & Miller's Insurance Co.
H. Clay Ward, Scottie Maxwell, for State of La. Through Dept. of Pub. Safety.
Laura K. Austin, for Mount Airy Insurance Company.
*222 Before YELVERTON, SULLIVAN and KNIGHT[*], JJ.
SULLIVAN, Judge.
This case provides an illustration of the "intolerable problems of multiple appeals and piecemeal litigation."[1] It arises in the context of summary judgments rendered in favor of and dismissing insurers based upon the issues of coverage and duty to defend. The trial court ruled that the insurance policies of third-party defendants, United Community Insurance Company (United) and Mount Airy Insurance Company (Mt. Airy), unambiguously exclude coverage to defendants/third-party plaintiffs, the City of Westlake (Westlake) and Westlake Police Department Officer Henry Simms (Officer Simms), for claims arising from a December 22, 1993 automobile accident which caused serious personal injuries to Jaymie Edwards. The United commercial general liability policy and the Mt. Airy commercial umbrella policy each contained law officer activities exclusions which were relied upon by United and Mt. Airy in arguing for summary judgment on the coverage and duty to defend issues. The trial court held that the United and Mt. Airy policies did not provide coverage and the insurers owed no duty to defend Westlake and Officer Simms against the legal claims of plaintiffs, Virginia Gail Edwards as the natural tutrix of the minor children, Jennifer Edwards, Janet Edwards, and Jaymie Edwards II and as co-curatrix with Eva Edwards of the interdict, Jaymie Edwards. United and Mt. Airy were dismissed from this suit with prejudice.
Westlake appealed and, significantly, was not joined in the appeal by Officer Simms. For the reasons which follow, we affirm the summary judgments rendered in favor of United and Mt. Airy which dismissed these insurers from the lawsuit.

UNDERLYING FACTS
This suit concerns two separate automobile accidents which occurred on Louisiana Highway 378 between Westlake and Moss Bluff. Highway 378, which is also known as Davis Road, is a two-lane road. The accidents occurred about one and one-half miles outside of the Westlake city limits.
Plaintiff's interdict, Jaymie Edwards, was injured when, while directing traffic (as a private citizen) around the first accident scene, he was struck by a Toyota station wagon driven by Florence Miller. Her automobile, which had been stopped by Edwards in the northbound lane, was rear-ended by an Oldsmobile Cutlass driven by Edward Daugherty, Jr. This collision caused Miller's vehicle to roll forward and impact Edwards as he stood in the roadway.
Plaintiffs alleged that, at some point between the two accidents, Officer Simms passed by the first accident site and negligently failed to render assistance and remedy a hazardous situation. Plaintiffs asserted that Westlake was independently negligent in failing to properly supervise Officer Simms and failing to formally establish policies for its employees encountering accident situations.
The first accident occurred in the early evening between 5:40 and 6:00 p.m. as Myrtis Woodard, a Davis Road resident traveling in a southerly direction, slowed her vehicle to turn into her driveway. She was rear-ended by a Nissan pickup truck driven by Gary Bailey. After the collision, the two vehicles were approximately fifty to seventy feet apart. Woodard's vehicle came to rest on the shoulder of Davis Road, while the Bailey vehicle remained one-half on and one-half off the road.
At the time of the first accident, Donald Handy, a Davis Road resident and neighbor of Woodard, was standing in his front yard with his then girlfriend (now wife) Ruth Ulan. They both witnessed the accident. Handy, a former law enforcement officer, checked on the conditions of the drivers and then began to direct traffic around the accident scene through the unblocked lane of travel. Edwards, Handy's neighbor, offered *223 his assistance in directing traffic. It is undisputed that Edwards had no prior experience directing traffic. Handy, an Emergency Medical Technician at the PPG Industries plant, equipped himself and Edwards with hand-held MX320 two-way radios and orange-coned flashlights routinely used by patrol officers to direct traffic. Handy and Edwards also employed small, ground-level flares to alert oncoming traffic to the presence of the accident scene. Edwards' wife, Virginia Gail, called State Police Troop D to report the accident.
When the two men began directing traffic, Handy was nearest the Nissan pickup truck (directing southbound traffic) and Edwards was in the vicinity of Woodard's vehicle (directing northbound traffic). For some unexplained reason, they switched positions soon thereafter. Handy began directing northbound traffic, and Edwards began directing southbound traffic. Handy and Edwards alternated in allowing traffic to pass through the unblocked northbound lane of travel for approximately twenty to forty minutes.
The facts leading up to the second accident are subject to conflict. Handy testified in deposition that a Holston ambulance arrived at the scene approximately fifteen minutes after the first accident and transported Woodard to the hospital. Handy recalled that, after the ambulance left with Woodard, a marked Calcasieu Parish Sheriff's Department vehicle passed by the scene at approximately forty-five miles per hour. According to Handy, the Sheriff's Department vehicle "went right by" and appeared to be on his way to another call. He said that it was possible that the Holston ambulance was still at the scene when the Sheriff's Department vehicle drove through, but he really thought it was not.
Handy stated that he and Edwards continued to direct traffic. Soon thereafter, he saw a marked Westlake Police Department vehicle driven by Officer Simms approach the accident scene and slow down. Officer Simms threw up his hands as if to ask Handy if everything was alright. Handy responded with an "OK" signal and Officer Simms proceeded through the accident scene without stopping. He did not return to the accident scene. At the time, according to Handy, there were no ambulances and no other police officers at the scene. Afterwards, a second Calcasieu Parish Sheriff's Deputy stopped at the scene, asked Handy for directions to Moss Bluff, then proceeded past the scene.
Handy explained that the second accident occurred approximately twenty to forty minutes after the first ambulance left the scene with Woodard. After this accident in which Edwards was injured, the highway became impassable. The emergency "911" system was contacted. According to Handy, a Louisiana State Police Trooper arrived next and took control of the situation. The trooper was soon joined by a Calcasieu Parish Sheriff's Deputy. The law enforcement officers completely blocked traffic on Davis Road. Edwards was placed in an ambulance about twenty minutes after being run over.
Office Simms' version of the events, given in his deposition, is somewhat different from that of Handy's version. His duty began at 5:30 p.m. on December 22, 1993. While in his police car in Westlake at the corner of Sampson Road and Sulphur Avenue shortly after 5:30 p.m., he saw one or two police cars and ambulances heading north on Sampson Road. He called June Broussard, the Westlake Police Department dispatcher, to find out what was going on and where the emergency vehicles were heading. According to Officer Simms, the dispatcher informed him of a "terrible accident on Davis Road." He then informed her he would check on the accident.
Officer Simms took his time driving to the accident site without his emergency lights on and arrived there in about five to ten minutes. When he arrived at the scene, he saw two ambulances on the right side of the road. He did not take notice of the cars involved in the first accident. He also noticed two men, Handy and Edwards, directing traffic around the accident scene. He recognized Handy and asked him if everything was all right. According to Officer Simms, Handy gave him a "thumbs up" sign.
*224 Officer Simms stated that he also noticed a Calcasieu Parish Sheriff's Department car and a Louisiana State Police car parked in a nearby Coastal convenience store parking lot. He saw a state police trooper there interviewing someone. He made no contact whatsoever with the law enforcement officers at the scene. He drove through the accident scene and returned to Westlake because "they had everything under control." He also acknowledged that, had no law enforcement officers been present at the scene, he would have been under a duty to stop and secure the scene.
Dudley Dixon, the Westlake mayor, testified in deposition that neither he nor the city council have any administrative or management authority over the Westlake Police Department because all such power is vested in the elected Westlake Police Chief, Jim Herford. The Westlake Police Department is separate from the control of the mayor and city council due to Westlake's incorporation status as a Lawrason Act (La.R.S. 33:321 et seq.) Charter municipality. Under this act, the city council has no power to pass an ordinance instructing the police chief on how to run the police department.
Mayor Dixon stated further that the city council's sole action with regard to the police department was to adopt the police manual promulgated by Chief Herford. The mayor and city council had no input in formulation of this police manual. He also explained that, since becoming mayor in 1982, he has never contacted the police chief to offer advice on or instructions on how an officer is to respond to an accident.
Police Chief Herford also testified via deposition. He stated that no one outside the police department has ever made decisions concerning which particular training seminars his officers are to attend. The mayor and city council also have never told him how to train his police force or how officers should investigate accidents. Chief Herford acknowledged that the Westlake Police Department has no written policy which specifically instructs officers on how to respond to automobile accidents. He said that they know how to do so from attending training seminars and from on the job experience.
According to Chief Herford, the Westlake police officers are authorized to respond to accidents which occur outside the city limits to assist with injuries and damages until the proper jurisdictional authorities arrive at the scene. The mayor and city council never told him to have his officers respond or not respond to accidents outside the city limits. Officer Simms' conduct on December 22, 1993 was "not extraordinary" and was acceptable to Chief Herford. He was not reprimanded for his actions. He described the Westlake city personnel, as a whole, to be "mutual aid oriented" because the city depends greatly on the help of outside agencies when emergencies arise at the various industrial plants inside the Westlake city limits.

PROCEDURAL ENTANGLEMENTS
Upon receipt of service of plaintiffs' original petition, Westlake and Officer Simms notified their three insurance carriers: United, Mt. Airy and International Surplus Lines Insurance Company (International), which, separate from the two other insurers, provided a "Law Enforcement Officers Professional Liability Policy." All three insurers denied coverage and refused to defend Westlake.
United denied coverage based on an endorsement to its commercial general liability policy captioned "EXCLUSIONLAW ENFORCEMENT ACTIVITIES", which provided:
This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any act or omission of your police department or any other law enforcement agency of yours including their agents or employees.
This exclusion does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the ownership, maintenance or use of your premises which are not ordinarily incidental to law enforcement activities.
*225 Mt. Airy denied coverage under its commercial umbrella policy based on its "LAW ENFORCEMENT ACTIVITIES EXCLUSION" endorsement, which provided:
This policy does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising from any act or omission of your police department or any other law enforcement agency of yours, including their agents or employees.
This exclusion does not apply to:
1. "Bodily Injury" or "Property Damage" arising out of the ownership, maintenance or use of an "Automobile"; or
2. "Bodily Injury" "Property Damage", "Personal Injury", or "Advertising Injury" arising out of the ownership, maintenance or use of your premises which are ordinarily non-incidental to law enforcement activities.
International denied coverage pursuant to the narrow definition of "bodily injury" in the definitions section of its policy, which provided:
III. Definitions:
* * * * * *
(e) The term "Bodily Injury", whenever used in this policy, means bodily injury, sickness or disease sustained by any person accidentally caused by any act when the Insured is making or attempting to make an arrest or while resisting an overt attempt to escape by a person brought under arrest before such person has or could have been brought before a magistrate or like officer authorized to hold a preliminary hearing. No act shall be deemed to be or result in bodily injury unless committed in the regular course of duty by the insured.
On September 1, 1994, Westlake and Officer Simms filed a third party demand against United, Mt. Airy, and International, seeking coverage and a defense from each. Plaintiffs then added these three insurers as direct defendants by a supplemental and amending petition filed on October 5, 1994.
On January 3, 1995, United filed its motion for summary judgment seeking its dismissal based on a lack of insurance coverage and a duty to defend. The next day, Westlake and Officer Simms filed a motion for summary judgment against United, Mt. Airy and International seeking a trial court ruling that the three insurers are obligated to provide coverage and defenses. They also filed a motion for summary judgment against the plaintiffs, claiming that they were not liable for Edwards' injuries. On January 27, 1995, Mt. Airy and International, who are represented by the same counsel, filed a motion for summary judgment based on a lack of insurance coverage and a duty to defend and which sought dismissal from this suit.
On March 8, 1995, the trial court held a hearing on all motions. Thereafter, the trial judge gave oral reasons for judgment granting the motions of United and Mt. Airy and denying International's motion due to the structural ambiguity of the International policy. The motion for summary judgment filed by Westlake and Officer Simms against United and Mt. Airy was denied, and the motion filed against International was necessarily granted. Additionally, the motion for summary judgment filed on behalf of Westlake and Officer Simms against the plaintiffs on the issue of liability was denied.
The trial court signed a judgment on April 10, 1995 which granted summary judgment in favor of United and Mt. Airy against Westlake and Officer Simms on the coverage and duty to defend issues. Additionally, the judgment (1) granted summary judgment in favor of United and Mt. Airy against the plaintiffs; (2) denied the motion for summary judgment of Westlake and Officer Simms filed against United and Mt. Airy on the coverage and duty to defend issues; (3) granted summary judgment in favor of Westlake and Officer Simms against International; and (4) denied the motion for summary judgment of International filed against Westlake and Officer Simms.
On May 9, 1995, International filed a petition for supervisory writs in this court pursuant to La.Code Civ.P. art. 2201 seeking reversal of the trial court's denial of its motion for summary judgment. This writ application was assigned docket number 95-604.
*226 On May 10, 1995, Westlake and Officer Simms also sought supervisory review of (1) the trial court's denial of its motion for summary judgment filed against plaintiffs on the liability issue and (2) the trial court's grant of summary judgment in favor of United and Mt. Airy on the coverage and duty to defend issues. This writ application was assigned docket number 95-612.
On May 15, 1995, Westlake appealed the trial court's grant of summary judgment in favor of United and Mt. Airy. Officer Simms did not join in the petition for appeal filed by Westlake. The trial court granted Westlake a suspensive appeal. This court assigned Westlake's appeal docket number 95-702, and it is the appeal which is the subject of this opinion.
On May 22, 1995, International filed a petition for suspensive appeal from the trial court's grant of summary judgment in favor of Westlake and Officer Simms. The trial court granted International's motion, and this court assigned International's appeal docket number 95-702, the same number as was assigned to the appeal of United and Mt. Airy.
On May 23, 1995, this court denied the supervisory writ application of Westlake and Officer Simms in docket number 95-612. We found no error in the trial court's denial of summary judgment on the issue of liability to the plaintiffs. On the insurance coverage issue, we stated as follows:
As to the cross-motions for summary judgment regarding the duty to defend and coverage of relators, City of Westlake and Officer Henry Simms, by respondents, [Mt. Airy] and [United], there is no error in the ruling of the Trial Court.
Westlake and Officer Simms have not sought further review with the Supreme Court of Louisiana of this denial of supervisory writs.
On May 25, 1995, this court denied International's supervisory writ application in docket number 95-604. On June 23, 1995, International sought supervisory review of this ruling from the Supreme Court of Louisiana.
On July 11, 1995, Westlake and Officer Simms filed a motion to dismiss International's appeal in this court in docket number 95-702. Westlake and Officer Simms argued that the judgment finding coverage and a duty to defend, insofar as International is concerned, was interlocutory and thus not capable of being appealed absent a showing of irreparable injury. On July 18, 1995, International filed an opposition to the motion to dismiss filed by Westlake and Officer Simms.
On August 16, 1995, this court rendered an opinion in this docket number 95-702 which dismissed International's appeal because the judgment appealed from was not a final judgment. 663 So.2d 102. We concluded that the judgment denying International's motion for summary judgment was interlocutory and not subject to being appealed. In so holding, we relied upon La.Code Civ.P. arts. 966(D) and 1915(A)(3), which provide, respectively, as follows:
La.C.C.P. art. 966
D. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
Art. 1915. Partial judgment
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
* * * * * *
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, except a summary judgment rendered pursuant to Article 966(D). [Emphasis ours.]
On October 6, 1995, upon review of our prior writ denial in our docket number 95-604, the Supreme Court of Louisiana granted International's writ application and remanded the case to this court for briefing, argument and opinion. This court then set a hearing date, January 10, 1996, to reconsider the merits of International's writ application.
On November 3, 1995, oral argument was had in the matter presently before this panel (docket number 95-702), Westlake's appeal *227 from the summary judgment granted in favor of United and Mt. Airy. Also on that date, International filed a motion in this court to stay the trial of this matter set for November 27, 1995 pending the resolution of International's writ application (docket number 95-604) which was remanded from the supreme court. On November 10, 1995, this court stayed the trial court proceedings pending review of International's writ application. Plaintiffs sought review of this stay order with the supreme court. On November 16, 1995, the supreme court denied plaintiffs' application to have the stay lifted.
The only portion of the above described procedural morass which is presently before this panel is Westlake's appeal from that portion of the trial court's judgment which granted summary judgment in favor of United and Mt. Airy on the issues of insurance coverage and duty to defend. In finding no insurance coverage and no duty to defend, the trial court also dismissed United and Mt. Airy from the suit.
A summary judgment rendered in favor of and dismissing an insurer, which determines that no insurance coverage exists and/or that the insurer has no duty to defend the insured, is a final appealable judgment pursuant to La.Code Civ.P. art. 1915(A)(1). A summary judgment rendered in favor of an insured, which determines that coverage exists and/or that the insurer has a duty to defend the insured, is an interlocutory judgment pursuant to La.Code Civ.P. art. 1915(A)(3). It is not appealable absent a showing of irreparable injury. Without irreparable injury, the insurer must obtain review through supervisory writs. La.Code Civ.P. art. 2083(A).
The portion of the judgment presently before this court is final and appealable since United and Mt. Airy were thereby dismissed from the suit

MERITS OF THE CASE
Summary judgments are reviewed on appeal de novo, i.e., under the same standard applied by the trial court. This standard, embodied in La.Code Civ.P. art. 966(B), is whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). A dispute as to whether, as a matter of law, the language of an insurance policy provides coverage to a party can be resolved within the context of a motion for summary judgment. A summary judgment which determines a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180; Gaspard v. Northfield Insurance Co., 94-510, 511 (La. App. 3 Cir. 11/2/94), 649 So.2d 979, writ denied, 94-2906 (La. 2/9/95), 650 So.2d 1166.
In Reynolds v. Select Properties, Ltd., 634 So.2d at 1183, the supreme court articulated the rules applicable to the interpretation of insurance policies as follows:
An insurance policy is a contract between parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. La.Civ.Code art. 2045. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La.Civ.Code art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an *228 ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. [Case citations and footnotes omitted.]
These rules of contractual interpretation are applicable to the insurance policies in the present case.
We note also that specific rules exist for the court in determining whether the insurer owes a duty to defend the insured. The insurer's duty to defend is determined by evaluating the allegations of the plaintiff's petition with regard to its insured. The insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. The insurer's duty to defend suits brought against its insured is broader than its obligation to provide insurance coverage for damage claims. Assuming all allegations of the petition are true, if there would be coverage under the policy and liability of the insured to the claimant, then the insurer must defend the insured regardless of the eventual outcome of the suit. The insurer's obligation to provide a defense exists if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. Steptore v. Masco Construction Co., Inc., 93-2064 (La. 8/18/94), 643 So.2d 1213; Employees Insurance Representatives, Inc. v. Employers Reinsurance Corporation, 94-676 (La.App. 1 Cir. 3/3/95), 653 So.2d 27, reconsideration denied, 94-676 (La.App. 1 Cir. 6/21/95), 658 So.2d 1335, writ denied, 95-1334 (La. 9/1/95), 658 So.2d 1268.
The material fact, that Officer Simms passed through the accident scene without stopping to render assistance or secure the scene at some point after the first accident but before the second accident, is not in dispute.
With the above legal principles as guidance, we shall evaluate whether the trial court erred, as a matter of law, in finding no insurance coverage and no duty to defend to exist under the United and Mt. Airy policies.

United Policy
United provided commercial general liability coverage to Westlake. In denying coverage and a duty to defend, United relied upon its "EXCLUSIONLAW ENFORCEMENT ACTIVITIES" endorsement. This endorsement provided, in pertinent part, as follows:
This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any act or omission of your police department or any other law enforcement agency of yours including their agents or employees.
Westlake contends that this exclusion does not unambiguously exclude coverage for the transgressions of Westlake and Officer Simms as alleged in plaintiffs' petition. Westlake argues primarily that, because the plaintiffs' petition contained allegations of independent negligence on the part of the city (mayor and city council) in failing to establish policies and failing to properly supervise its employees, insurance coverage for these independent omissions are not unambiguously excluded by the law enforcement activities exclusion. The city urges that this is a reasonable interpretation of the policy exclusion under which coverage can be afforded. United is obligated to provide a defense, according to Westlake, because the allegations of mayoral and city council negligence do not unambiguously exclude coverage.
United counters that the granting of summary judgment was correct. It contends that, assuming plaintiffs' allegations are true, the endorsement unambiguously excludes coverage because the operative allegation is that Officer Simms' "act or omission" caused *229 "bodily injury" to Edwards. Mt. Airy also urges that, as a Lawrason Act Charter municipality, Westlake's mayor and city council have no management, supervisory, or training authority over the police department generally or its members specifically. Therefore, as a matter of law, the mayor and city council could not be held liable to plaintiffs on the grounds complained of without the existence of the express power and a legal duty to establish police department policies and supervise the department's employees. United relies upon the fifth circuit's opinion in Siat v. Fauria, 494 So.2d 1224 (La.App. 5 Cir.), writ denied, 497 So.2d 1012 (La.1986), reconsideration denied, 500 So.2d 416 (La. 1987), and argues that it is controlling.
In Siat, 494 So.2d 1224, an off-duty policeman fired his revolver in an apartment, and the bullet traveled through the floor and struck a child in the apartment below. Upon being sued, the policeman's employer, the Board of Commissioners for the Port of New Orleans, filed a third-party demand against its primary and surplus insurers seeking defense and indemnification. After cross-motions for summary judgment were filed, the trial court granted summary judgment in favor of the Board and ordered the insurers to defend the Board. The insurers appealed, relying upon the following exclusion endorsement:
It is agreed that such insurance as is afforded by this policy for bodily injury does not apply with respect to claims arising from activities of watchmen, security personnel and policemen employed by or on behalf of the insured.
The insurers argued that, under this exclusion, the injuries suffered by the child were excluded from coverage.
The Board, like Westlake in the present case, contended that plaintiff's allegations of independent direct negligence on the part of the Board (failing to adequately train the policeman, issuing him a defective gun, failing to test, inspect or detect the defectiveness of the gun, and altering the gun) were separate from the policeman's activities. Therefore, according to the Board, the exclusion did not unambiguously exclude coverage as to these separate allegations of negligence.
The fifth circuit rejected the Board's argument and reversed the summary judgment. In doing so, the court reasoned as follows:
The operative fact of the injuries to the Siat child is that they arose from activities of Fauria, a policeman employed by or on behalf of the Board. That defects in the gun may have caused it to discharge, or that Fauria may have been improperly trained in handling the gun, are of no moment in this respect: Had Fauria not been where he was when he was, the resulting shot could not have injured Nikia Siat. Without Fauria's activities, there would be no lawsuit.

The language of Endorsement No. 9 clearly excludes "claims arising from activities of * * * policemen employed by or on behalf of the insured."
* * * * * *
The clear intent of the endorsement is to exclude any activity of a policeman. We find the language unambiguous.
Id. at 1226. [Emphasis ours.]
The reasoning of the fifth circuit in Siat is persuasive, given the procedural and contractual similarities present in this case. In the case sub judice, we conclude that the allegations of independent negligence on the part of the mayor and city council are likewise of no moment. It is undisputed that these entities, by operation of law, have no policy making, supervisory, or management power over the police department. The exclusionary language is clear and unambiguous. It was clearly intended to exclude from coverage the acts or omissions of policemen such as Officer Simms.
Finally, Westlake argues that Siat is distinguishable and should not be relied upon because the exclusionary clause in this case used the phrase "act or omission" while the exclusionary clause in Siat employed the word "activities." Westlake urges that the language used in the United policy constitutes specific legal terms referring to negligent acts, as opposed to the broader language of the policy in Siat which precluded coverage for all acts of policemen. The city urges that this distinction warrants a determination of an existence of insurance coverage *230 and a duty to defend. We disagree. Westlake's argument amounts to a distinction without a substantive difference. Employing common ordinary usage, it is clear that the phrase "act or omission" is sufficiently similar to the word "activities." This difference in semantics does not dictate a different result.
For these reasons, we conclude that the United policy unambiguously excludes insurance coverage to Westlake and Officer Simms for Edwards' injuries. When applied to the undisputed material facts in this case, no reasonable interpretation of the United policy affords coverage. Therefore, the trial court's summary judgment in favor of and dismissing United was properly granted.

Mt. Airy Policy
The trial court rendered summary judgment in favor of Mt. Airy based upon its "LAW ENFORCEMENT ACTIVITIES EXCLUSION." The endorsement provided, in pertinent part, as follows:
This policy does not apply to "Bodily Injury", "Property Damage", "Personal Injury", or "Advertising Injury" arising from any act or omission of your police department or any other law enforcement agency of yours, including their agents or employees.
This exclusion does not apply to:
1. "Bodily Injury" or "Property Damage" arising out of the ownership, maintenance or use of an "Automobile";
* * * * * *
On appeal, Westlake raises the same argument with regard to the Mt. Airy exclusion that it raised with reference to United's use of the phrase "act or omission." For the same reasons stated in the preceding section of this opinion, we conclude that the "act or omission" language unambiguously excludes coverage.
Westlake also asserts that the above quoted "ownership, maintenance or use of an `Automobile'" exception to the broad law enforcement activities exclusion is applicable. The city argues that, because Officer Simms' acts or omissions resulted in part from the use of his patrol car (he drove by the scene and presumably would have used the automobile to help secure the scene and block traffic), the exception applies to negate the general exclusion. We disagree.
Our review of the jurisprudence reveals only cases in which the "ownership, maintenance, or use of an automobile" language has been used in an exclusion, not an exception to an exclusion which would make coverage effective. Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978); Manuel v. Luckett, 577 So.2d 203 (La.App. 1 Cir.), writ denied, 580 So.2d 378 (La.1991). This class of cases has uniformly held that, in order to determine whether an automobile use exclusion applies, both of the following questions must be answered affirmatively: (1) was the conduct of which the insured complains a legal cause of injury? and (2) was it a use of the automobile? The exclusionary clause, which is strictly construed in favor of coverage, does not apply where the insured's act is the result of negligence independent of, even though concurring with, his use of the automobile. LeJeune, 365 So.2d at 471. "The specific duty breached by the insured must flow from the use of the automobile." Manuel, 577 So.2d at 207. Thus, in order for the exception to the exclusion to apply (and afford coverage), the specific duty breached must be dependent upon the automobile.
In LeJeune, 365 So.2d 471, a case in which a deputy failed to secure an intersection while escorting a funeral procession, the insurer attempted to apply an automobile use exclusion under the theory that the deputy could have used his police car to block the intersection. The Supreme Court of Louisiana found the exclusion inapplicable, reasoning as follows:
[T]he exclusion clause in Western World's policy does not operate to exclude coverage of Deputy Smith's negligence leading up to the collision. Although he could and should have used his police car to block the intersection and warn approaching drivers of the dangerous situation, it was not any use or abuse of his vehicle itself that led to his liability. Rather, it was his failure to supersede the automatic traffic signal and *231 warn traffic approaching on the right-of-way highway that a funeral procession was going to pass through it, a function of his duties as law enforcement officer.
The basis of Deputy Smith's liability is his negligent failure to perform this law enforcement duty, the risk specifically insured by Western World's policy. The circumstance that the deputy was to use his automobile in the performance of this duty was incidental to the breach of this law enforcement duty. His liability is not based upon the negligence use of his vehicle, but rather upon his negligence in failing to secure the intersection so as to alert approaching traffic of the danger involved. The damages to the injured victim arose out of the deputy's breach of his law enforcement duties, not from the deputy's use of his automobile.
Id. at 479. [Footnote omitted.]
Although this particular limiting phrase has not been examined by a court in the context of an exception to an exclusion, the general rule is that the exclusion, as a whole, should be narrowly construed in favor of coverage. This necessarily means that an exception clause, which is in effect a coverage clause, should be liberally construed in favor of coverage.
We conclude that the "ownership, maintenance, or use of an automobile" exception to the exclusion is inapplicable to the facts of this case. As in LeJeune, the basis of Officer Simms liability was his negligent failure to perform his alleged law enforcement duty, the risk specifically excluded by Mt. Airy's exclusion. His liability is based not on his negligent use of his automobile, and the use thereof alleged by Westlake to have been negligent was, at best, incidental to his alleged breach of his law enforcement duty. The specific duty alleged to have been breached did not flow from his use of the automobile. Even construing the automobile use exception to the exclusionary language liberally, we conclude that Officer Simms' use of his automobile was too remote in relation to the specific duty alleged to have been breached.
For these reasons, we conclude that the trial court's summary judgment rendered in favor of Mt. Airy was proper.

DECREE
For the above and foregoing reasons, we affirm the portion of the trial court judgment rendered in favor of United and Mt. Airy. Costs of this appeal are assessed to defendant, third-party plaintiff/appellant, the City of Westlake.
AFFIRMED.
YELVERTON, J., concurs.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1241 (La.1993).