*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0217P (6th Cir.)
File Name: 04a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

RALPH E. STEVENS, *et al.*,
  *Plaintiffs,*

  *v.*

FIREMAN'S FUND INSURANCE
CO.,
  *Defendant-Appellee,*

TRANSYSTEMS, INC., and
LITTLE BROWNIE PROPERTIES,
INC.,
  *Defendants-Appellants.*

No. 03-3005

———————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00275—Edmund A. Sargus, Jr., District Judge.

Argued: March 12, 2004

Decided and Filed: July 9, 2004

———

2  *Stevens, et al. v. Fireman's*      No. 03-3005
   *Fund Ins. Co., et al.*

———

Before: MARTIN, NELSON, and FRIEDMAN, Circuit
Judges.*

———————

**COUNSEL**

**ARGUED:** Michelle R. Dudley, SHAYNE &
GREENWALD, Columbus, Ohio, for Appellants. Janet A.
Kachoyeanos, CARON, CONSTANTS & WILSON,
Chicago, Illinois, for Appellee. **ON BRIEF:** Gary D.
Greenwald, SHAYNE & GREENWALD, Columbus, Ohio,
for Appellants. Janet A. Kachoyeanos, CARON,
CONSTANTS & WILSON, Chicago, Illinois, for Appellee.

———————

**OPINION**

———————

DAVID A. NELSON, Circuit Judge. This is a diversity
case that presents a question as to the applicability, under
Florida law, of an exclusionary clause in a liability insurance
policy. The appellants — two affiliated corporations engaged
in the trucking business — carried insurance under a single-
insurer package that included both a commercial motor
vehicle policy form (or "auto form") and a commercial
general liability (CGL) policy form. The latter contained an
"auto exclusion" clause negating CGL coverage for "[b]odily
injury or property damage arising out of the ownership . . .
use or entrustment to others of any . . . [land motor vehicle,
trailer or semi-trailer . . .] owned or operated by or rented or
loaned to any insured."

———

*The Honorable Daniel M. Friedman, Circuit Judge of the United
States Court of Appeals for the Federal Circuit, sitting by designation.

A tractor-trailer owned by one of the appellants and leased by it to the other appellant was involved in a collision with a train. Several people were injured in the accident, and there was significant property damage.

It was asserted in the ensuing litigation that the insurance company was obligated to indemnify the appellants under both the commercial general liability policy and the motor vehicle policy, with the two policy limits being aggregated. This assertion was based on the proposition that the auto exclusion clause did not apply where, as here, there was a claim that the accident resulted in part from negligence in the dispatching of a truck driver who should not have been permitted to drive because he had exceeded an hours-in-service limitation.

The district court rejected this proposition, holding that the auto exclusion clause meant what it said and effectively barred coverage under the commercial general liability policy. Upon de novo review we find ourselves in agreement with the district court's view; the judgment in favor of the insurance company will therefore be affirmed.

I

Appellant Transystem, Inc., owned a tractor-trailer that was leased to its affiliate, Appellant Little Brownie Properties, Inc. In the spring of 1999, while the rig was being driven by a Transystems employee who had been assigned to operate it by Little Brownie, the tractor-trailer collided with a Norfolk Southern freight train in Perry County, Ohio. The train was derailed, and four members of the train crew were injured.

Transystems and Little Brownie were insured by Appellee Fireman's Fund Insurance Company. The contract of insurance included a commercial general liability coverage form and an auto coverage form. Each form had a policy limit of $1 million.

In March of 2001 a declaratory judgment action was commenced in the United States District Court for the Southern District of Ohio by Norfolk Southern Railway Company and others against Fireman's Fund, Transystems, Little Brownie, and the driver of the tractor-trailer. Count III of the complaint sought a declaration that the general liability form of the Fireman's Fund policy covered damages resulting from Little Brownie's allegedly negligent dispatch of the driver. (The plaintiffs in the declaratory judgment action had previously sued Transystems and Little Brownie, among others, for compensatory and punitive damages. One of the claims asserted against Little Brownie was that it had dispatched the driver of the tractor-trailer to a pickup location at a time when he had exceeded the maximum hours in service allowed under the Federal Motor Carriers Safety Regulations; this purported violation was alleged to have been a contributing cause of the collision.)

Transystems and Little Brownie filed cross-claims against Fireman's Fund, joining in the plaintiffs' contention that coverage was available under the general liability form. Fireman's Fund then filed a third-party complaint for a declaratory judgment and interpleader, naming train crew members as defendants. All parties moved for summary judgment.

The district court granted Fireman's Fund's motion for summary judgment and denied the other motions. Applying Florida law — Florida being the state that had the most significant relationship to the insurance contract — the court held that the "auto exclusion" clause in the general liability form barred coverage under that form. Final judgment was entered in favor of Fireman's Fund, whereupon Transystems and Little Brownie filed a timely appeal.

II

The parties agree that the auto form provides coverage of $1 million in respect of the collision. Our task is to decide whether the general liability form provides additional coverage.

The auto exclusion clause of the general liability form certainly seems to preclude coverage. As noted at the outset of this opinion, the clause excludes from coverage all "[b]odily injury or property damage arising out of the ownership . . . use or entrustment to others of any . . . [land motor vehicle, trailer or semi trailer . . .] owned or operated by or rented or loaned to any insured." The bodily injuries and property damage sustained in the collision undoubtedly arose out of the use of such a vehicle, whether or not they also arose out of negligence in the dispatch of the driver.

Transystems and Little Brownie contend that the dispatch was somehow independent of the use of the tractor-trailer. Acceptance of this contention would mean that the companies could claim the benefit of at least two Florida appellate decisions.

Florida's Fourth District Court of Appeal has held that damages arising from an auto accident may be covered by a general liability policy with an auto exclusion clause if at least one alleged cause of the accident did not involve the use of an auto. In a case involving a child's fall from a truck-pulled "playground ride," the Fourth District held that a general liability policy covered the child's injuries because negligent supervision of the child – which the court viewed as "independent of, and unrelated to," use of the truck – was alleged as a cause of the accident. *Frontier Insurance Co. v. Pinecrest Preparatory School Inc.*, 658 So.2d 601, 603 (Fla. App.), *review denied*, 664 So.2d 248 (Fla. 1995); see also *Westmoreland v. Lumbermens Mutual Casualty Co.*, 704 So.2d 176, 187 (Fla. App. 1997), *review dismissed*, 717 So.2d

534 (Fla. 1998), where the same court held that a homeowner's insurance policy covered carbon monoxide injuries alleged to have been caused "not by the running engine of the motor vehicle but instead by . . . the negligent placement of the air conditioning equipment in the garage, or by the failure to open the garage door or to ventilate the garage, or by the failure to locate carbon monoxide detection devices throughout the house."

The majority of Florida's district courts of appeal that have considered such a question, however, have held that general liability policies with auto exclusion clauses provide no coverage for injuries that would not have occurred but for the use of an auto. Thus where a van was used to pull a roll of carpet out of a truck and a man was struck and injured by the carpet, the Fifth District Court of Appeal declined to hold that "fail[ure] to have proper equipment (such as a forklift) for the unloading of carpet" was an independent cause of the accident that could support general liability coverage. *Hagen v. Aetna Casualty & Surety Co.*, 675 So.2d 963, 965 (Fla. App.), *review denied*, 683 So.2d 483 (Fla. 1996). As the court explained,

> "appellants . . . urge that the negligence was in not having a forklift; others might say the 'plan' to unload the carpet was unnecessarily dangerous and would justify liability; and still others might find liability simply because there was 'negligence in the way the carpet was unloaded.'
>
> *            *            *
>
> But whether we consider . . . 'the failure to have a forklift,' the 'plan' or the 'negligent unloading,' each necessarily involves the *use* of the vehicle in the *act* which caused the injury." *Id.* at 967.

The court concluded that the negligent use of an auto was the sole legal cause of the accident. See *id.* at 968.

In *American Surety & Casualty Co. v. Lake Jackson Pizza, Inc.*, 788 So.2d 1096, 1099-1100 (Fla. App. 2001), *review denied*, 814 So.2d 439 (Fla. 2002), Florida's First District Court of Appeal held that a general liability policy did not cover claims of negligent hiring, training, and supervision of a pizza delivery man "because the injuries [resulting from an automobile accident caused by the delivery man] arose out of the ownership, maintenance, or use of an auto owned or operated by an insured." The employer's policies and practices did not, in the court's view, constitute unrelated or independent causes of the accident. See *id.* at 1100.

Absent any contrary indication from the Supreme Court of Florida, we are inclined to think that *Hagen* and *Lake Jackson Pizza*, rather than *Frontier Insurance* and *Westmoreland*, represent the better view. The former cases are more faithful, it seems to us, to the language of the typical auto exclusion clause – language that asks whether an injury arose from the use of an auto and not whether every contributing cause involved the use of an auto. *Hagen* and *Lake Jackson Pizza* also draw support from the principle that automobile policies and general liability policies are usually "deemed [to be] complementary" rather than overlapping. *Frontier Insurance*, 658 So.2d at 603; see *Muzzio v. Auto-Owners Insurance Co.*, 799 So.2d 272, 274 (Fla. App. 2001) ("Florida law has generally recognized that duplicate coverage for an automobile accident injury covered by an automobile policy is not ordinarily available . . . ."), *review denied*, 817 So.2d 848 (2002).

In the circumstances of the case at bar, however, it is probably unnecessary for us to opine on how we think the conflict among Florida's district courts of appeal should be resolved. It seems to us that dispatch of a truck driver – unlike supervision of a child, for instance – cannot be

considered "independent of, and unrelated to" use of a truck. *Frontier Insurance*, 658 So.2d at 603. The dispatch has no purpose, after all, other than to get the truck moving. Dispatch, in this respect, is comparable to hiring, supervision, or retention of a driver – acts that Florida law regards as "inextricably intertwined" with the use of an auto. *Muzzio*, 799 So.2d at 274-75.

Transystems and Little Brownie rely on *Manuel v. Luckett*, 577 So.2d 203, 208 (La. App.), *writ denied*, 580 So.2d 378 (La. 1991), where a Louisiana court held that one form of dispatch – a sheriff's deputy's coding of a radio call – "did not constitute a use of [an] automobile." But in *Manuel* the court not only heard evidence that "the coding system had a use beyond conveying information on how to use an automobile," it also heard evidence that deputies frequently responded to coded calls without using an auto. *Id.* at 206. Against that background the court concluded that "[t]he duty to properly code a call exists independently of the automobile." *Id.* at 208. In the case at bar, by contrast, there is no suggestion that Little Brownie's dispatch of the tractor-trailer driver had any function independent of the use of a motor vehicle. Little Brownie owed no duty of care to the plaintiffs, we believe, except insofar as the dispatch resulted in such use.

Because the dispatch of a driver is "inextricably intertwined" with the use of a motor vehicle, there is no view of Florida law under which the appellants' general liability form can reasonably be thought to cover the damages in this case. The auto exclusion clause precludes such coverage, and the judgment entered in favor of Fireman's Fund is **AFFIRMED**.